113 N.J. Super. 87 (1970)
272 A.2d 762
THE BOROUGH OF ROSELLE PARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
THE TOWNSHIP OF UNION, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; THE BOARD OF ADJUSTMENT OF THE TOWNSHIP OF UNION AND UNION SENIOR CITIZENS HOUSING CORPORATION AND LOUIS J. GIACONA, BUILDING INSPECTOR OF THE TOWNSHIP OF UNION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 11, 1970.
*89 Mr. Alfonso L. Pisano for plaintiff (Messrs. Pisano & Triarsi, attorneys).
Mr. Abraham H. Sles for defendant Union Senior Citizens Housing Corporation.
Mr. Julius R. Pollatschek for defendant Township of Union and Louis J. Giacona, Building Inspector of the Township of Union (Messrs. Kein, Scotch, Pollatschek, Iacopino and Kein, attorneys).
Mr. Arthur J. Sabatino for defendant Board of Adjustment of the Township of Union.
FELLER, J.S.C.
This is an action in lieu of prerogative writs instituted by the Borough of Roselle Park challenging the granting of a variance by the Township Committee of the Township of Union.
Plaintiff contends that it is a municipality adjoining the Township of Union and that defendant Union Senior Citizens Housing Corporation made application to the Union Township Zoning Board of Adjustment for a recommendation of a variance to construct a three-story senior citizens' housing project. The application involved property known as Index 15, Block 6, Lot 53, commonly known as No. 35 Sumner Avenue, in a Residence A zone in the Township of Union. Plaintiff further contends that the property is within 200 feet of the boundary line between Roselle Park and Union Township, as well as property located in Roselle Park.
On December 8, 1969 a hearing took place before the Township board of adjustment. Witnesses were heard in behalf of the applicant, and a number of objectors, including representatives of plaintiff, appeared at the hearing and noted objections to the application. Proceedings were adjourned *90 to December 22, at which time the board of adjustment adopted a resolution recommending grant of a variance. The township committee granted the variance on February 3, 1970.
This action was filed challenging the validity of the original recommendation of the board of adjustment as not being supported by the evidence introduced at the hearing and challenging the granting of the variance by the township committee, and noting that the grant of said variance failed to meet the requirements of the applicable statutes. Plaintiff further contends that in recommending the granting of the variance the board of adjustment ignored the comments made by the Union County Planning Board set out in a letter dated December 8, 1969, which letter was delivered to the board of adjustment on said date. Plaintiff contends that the granting of the variance will increase traffic congestion and cause flooding conditions in Roselle Park and also add to the high population density proposed for the area.
Defendants contend that the Borough of Roselle Park has no legal standing to bring this action; that only property owners have such standing. Defendants further contend that the application of the Union Senior Residents Housing Corporation for a variance was properly granted for the erection of a three-story mid-rise apartment building of fireproof masonry construction; that the objections made by plaintiff before the Township board of adjustment were without valid factual or legal basis, and that plaintiff failed to submit any legal evidence to support its contentions.
Defendants further contend that the board of adjustment considered all of the testimony and other evidence before it in making its findings, which findings were based upon ample evidence appearing at the hearing and fully supported the findings and determination of the Board of adjustment.
Defendants contend that the granting of the variance by the township was proper, and the resolution of the board of adjustment and township committee based upon their respective *91 findings and approval concluded that there were special reasons for the granting of the requested variance, and that the granting of such variance would not be detrimental to the public good and would not substantially impair the intent and purpose of the zone plan and zoning ordinance of the township.
It is further contended by defendants that a letter from the Union County Planning Board has no binding authority at a hearing before the board of adjustment.
The resolution of the Township Committee, in granting the variance, concurred in the resolution of the Board of Adjustment. [The resolution not reproduced sets out at length the factual findings on which the board found that there were sufficient special reasons for granting the variance and that there would not be substantial impairment to the public good or to the intent and purpose of the zone plan and zoning ordinance of the township.]
The transcript of the proceedings of the meeting of the township committee on February 3, 1970 indicates that it examined the record and exhibits and plans and studied the testimony of the experts and on the basis of this the township committee granted the variance.
Roselle Park then filed this action in lieu of prerogative writs challenging the action of the board of adjustment in recommending the granting of the variance and the action of the township committee in granting the variance, and demanding that their actions be reversed and set aside. Plaintiff also demands that the Township building inspector be enjoined from issuing a building permit for the project.

I
Defendants contend that Roselle Park lacks standing to challenge the granting of a zoning variance by the Township of Union in the instant case. In order to determine whether a neighboring municipality has standing to contest the validity of the act of another municipal body in *92 granting a zoning variance, it is necessary to examine this question from a historical perspective.
Originally, persons who neither resided in nor owned property in the municipality in which property to which a variance had been granted was located had no status as an aggrieved person, no matter to what extent the value of their property located just over the municipal boundary line might be affected. Nor was the adjoining municipality considered an "aggrieved person."
2 Rathkopf, Law of Zoning and Planning, C. 63, § 4, at 63-28, states:
While this appears to be too parochial a view, particularly in the light of the emphasis placed upon regional planning by the New York General Municipal Law, Article 12-B and the requirements of notice of certain proposed municipal zoning action to neighboring municipalities, New York Town Law, Sec. 264; New York Village Law, Sec. 178, a contrary view would conflict with the obligation placed upon a municipality to zone in accordance with a comprehensive plan of its own, as well as the concept of municipal sovereignty over its own territory.
This was originally also the state of the law in New Jersey. See Cresskill v. Dumont, 15 N.J. 238 (1954). However, some recent cases seem to indicate a trend away from this rule. See 8 William & Mary L. Rev. (Winter 1967), at 304. See also Wash. U.L. Rev., (Feb. 1965), § 1 at 121.
What may be the most appropriate use of any particular property depends not only on all conditions, physical, economic and social, prevailing within the municipality, and its needs, present and reasonably prospective, but also on the nature of the entire region in which the municipality is located and the use to which the land in that region has been or may most advantageously be put. The effective development of a region should not and cannot be made to depend upon the adventitious location of municipal boundaries, often prescribed decades or even centuries ago and based in many instances on considerations of geography, commerce or politics that are no longer significant *93 with respect to zoning and the use of property. Changes in methods of transportation, as well as in living conditions, have only served to accentuate the unreality in dealing with zoning problems and the use of property on the basis of the territorial limits of a municipality. Improved highways, new transportation and communication facilities have made possible the use of property not contemplated in the earlier stages of zoning. The resulting advantages advance the general welfare of the entire region. Duffcon Concrete Products, Inc. v. Cresskill, 1 N.J. 509 (1949).
In Cresskill v. Dumont, 28 N.J. Super. 26, 44 (Law Div. 1953), the court said that the statute provides that a municipality may sue and be sued. N.J.S.A. 40:43-1. The statute authorizes municipalities to adopt zoning ordinances for the public good. The municipality is charged with the duty of enforcing those ordinances in the public interest. Garrou v. Teaneck Tryon Co., 11 N.J. 294 (1953). The court further stated that a municipality has the power to bring suit against anyone for the purpose of protecting the public interest which the municipality itself is endeavoring to promote and which it is in duty bound to promote, and cited McQuillin, Municipal Corporations (2d ed.), § 2650, which states that a municipality may sue and be sued in the same manner as natural persons.
On appeal the New Jersey Supreme Court (15 N.J. 238 (1954)), affirmed the judgment of the Law Division in setting aside the amendment to the zoning ordinance. However, the court stated
The appellant first argues that the plaintiffs were not proper parties to the action and that therefore its motion to dismiss the complaint should have been granted. In this regard the appellant directs its attack primarily toward the three municipal plaintiffs and the individual plaintiffs who reside in the other boroughs. It is unnecessary, however, for us to decide this issue, because the Wendlands own property on Block 197, the very area affected by the amendatory ordinance. Clearly they have sufficient interest to bring this action. Speakman v. Mayor and Council of Borough of North Plainfield, 8 N.J. 250, 258 (1951), Menges v. Township of Bernards, 4 N.J. 556, 559 (1950). The fact that they did not testify is not significant, since *94 they were parties plaintiff and all evidence produced on the plaintiffs' case inured to their benefit. It is therefore immaterial whether the municipal and remaining individual plaintiffs have adequate status to challenge the ordinance and the question is therefore reserved. [at 245]
Thus the court declined to pass upon the question, although affirming the trial court's decision that the amendment should be set aside. Nevertheless, there seemed to be clear indications in the opinion that the responsibility of a municipality for zoning does not end with the municipal boundaries.
The court in Cresskill, supra, 15 N.J. at page 247, noted that the appellant in that case contended that the responsibility of a municipality for zoning halts at the municipal boundary lines without regard to the effect of its zoning ordinances on adjoining and nearby lands outside the municipality. The court stated that such a view might prevail where there are large undeveloped areas at the borders of two contiguous towns, but it cannot be tolerated where, as here, the area is built up and one cannot tell when one is passing from one borough to another. Under such circumstances municipal boundary lines are not Chinese walls separating one municipality from the other.
The court in Cresskill further stated:
* * * At the very least Dumont owes a duty to hear any residents and taxpayers of adjoining municipalities who may be adversely affected by proposed zoning changes and to give as much consideration to their rights as they would to those of residents and taxpayers of Dumont. To do less would be to make a fetish out of invisible municipal boundary lines and a mockery of the principles of zoning. There is no merit to the defendant's contention. [at 247]
The court also stated (at 249) that although the exercise of zoning powers is a constitutional responsibility of the municipalities (N.J. Const. (1947), Art. IV, § VI, par. 2), it is to be noted that the Legislature has also provided for both county planning boards. (N.J.S.A. 40:27-1) and regional planning boards (N.J.S.A. 40:27-9), thus indicating its *95 intention to extend planning beyond municipal lines. This intention was later manifested by amendments to N.J.S.A. 40:55-53, which provide, in effect, that where a hearing is required in respect to granting a variance and the property involved is within 200 feet of an adjoining municipality, the clerk of said municipality shall be served with written notice of said hearing and the county planning board shall also be served with notice if, in addition, the property involved adjoins a county road.
In 9 Rutgers L. Rev. 702, the article discussed in detail the rule set out in Duffcon Concrete Products, Inc. v. Cresskill, supra. It states:
The Borough of Creskill took the language of the Chief Justice seriously, so seriously in fact that it later began suit against its neighbor, the Borough of Dumont, to set aside an amendment to the Dumont zoning ordinance on the ground that it failed to comply with the proper regional considerations. In its opinion the Court, again with the Chief Justice writing, substantially reinforced its policy concerning regional concepts in zoning, held that the Borough of Dumont had at least a duty to listen to the grievances of its neighbor when contemplating the enactment of zoning legislation affecting the latter's interests and held Dumont's ordinance invalid. The Law Division in the same case had specifically held, extending the logic of the Duffcon case that a municipality had standing to challenge a neighbor's zoning ordinance. The Supreme Court was able to avoid passing on this delicate issue, since one of the plaintiffs was without question a proper party, while at the same time leaving little doubt that in a case of necessity the issue would be resolved in favor of standing [Emphasis added]
It should be noted that the article ends with the conclusion that there is little doubt that in case of necessity the court would resolve this issue in favor of standing.
There seems to be legal justification for this conclusion.
In Jersey City v. Hague, 18 N.J. 584 (1955), the court said:
There is an implied power in public officers to take all legal measures, in their official character, which may be requisite to enable them to execute a trust or discharge the duty imposed on them by law, where there is no statute prescribing the means by which such trust *96 shall be executed or duty discharged [citing Cornell v. Town of Guilford, 1 Denio [N.Y.] 510, 515; see Supervisors [Supervisor of town] of Galway v. Stimson, 4 Hill [N.Y.] 136; Jackson v. Hartwell, 8 Johns [N.Y.] 422]. [at 598]
N.J. Const. (1947), Art. IV, § VII, par. 11, provides:
The provisions of this Constitution and of any law concerning municipal corporations formed for local government, or concerning counties, shall be liberally construed in their favor. The power of counties and such municipal corporations shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law.
N.J.S.A. 40:43-1 provides:
The inhabitants of every municipality shall be a body corporate in fact and in law, and by its corporate name * * * may sue and be sued * * *.
The court in Jersey City v. Hague, supra, recited the above constitutional and statutory provisions and stated (at 598, 599) that to hold that specific express authority is required in every instance of suit by a municipality would be to render meaningless the general statutory power to sue which, according to constitutional mandate, must be liberally construed. See Edwards v. Mayor, etc., Moonachie, 3 N.J. 17 (1949). The fact that in so few cases the issue of power to bring such a suit has been raised, and rarely successfully, is, we think, indicative that the generally accepted belief is that a municipal corporation has the inherent power to sue as an incident of its creation.
This is consistent with the opinion of the court in Leonia v. Fort Lee, 56 N.J. Super. 135, 138, 139 (App. Div. 1955), where the Borough of Leonia brought a proceeding in lieu of prerogative writs to set aside an ordinance adopted by the Borough of Fort Lee. The court stated that the right of the Borough of Leonia to maintain that action or those that followed is not questioned.
*97 These cases involved attacks on zoning ordinances, but the same rules would apply in attacks on variances granted from the terms of an ordinance.
This court takes judicial notice that there are no large undeveloped areas at the border of Roselle Park and Union, but that the area is built up and it is difficult to tell when one is passing from Roselle Park to Union, or vice versa. See In re Simpson, 136 N.J. Eq. 597, 611 (Prerog. Ct. 1945). As the court stated in Cresskill, supra, * * * municipal boundary lines are not Chinese walls separating one municipality from the other.
Therefore, it is the opinion of this court that plaintiff borough has legal standing to institute this action.

II
[The court held that there were special reasons for granting the variance and that the variance would not result in substantial detriment to the public good or the intent and purpose of the zone plan and zoning ordinance, under N.J.S.A. 40:55-39(d).]

III
[The court held, contrary to plaintiff's claims, that the variance would not increase traffic congestion, cause flooding or add to the population density of the area.]

CONCLUSION
It is the opinion of this court that
(1) Plaintiff borough has legal standing to institute this action.
(2) (a) The variance can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance.
*98 (2) (b) Special reasons for granting the variance exist, for it is designed to promote the general welfare of the community in that it inherently serves the public good, regardless of whether the use is peculiarly fitted to the particular location for which the variance is sought.
(3) The variance will not have any adverse or detrimental effect upon the Borough of Roselle Park or any property in Roselle Park.
Accordingly, judgment is hereby entered for defendants and the building inspector is directed to issue the necessary building permit.