## No. 27415

**John Wimberly, Joe Wilson, Patrick Oneil, Albert Oneil, Larry Baker, Kenneth Baker, Adrian Cochran, and Mel Northington v. Irving Ettenberg, Judge of the County Court in and for the City and County of Denver, State of Colorado**

(570 P.2d 535)

Decided October 11, 1977.

164

Hoffman, McDermott & Hoffman, Gene M. Hoffman, for petitioners-appellees.

Dale Tooley, District Attorney, Thomas P. Casey, Chief Appellate Deputy, for respondent-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The central issue on appeal is whether petitioner had standing to obtain an injunctive order of the Denver district court which prohibited a judge of the county court from releasing defendants on a particular type of bail. We reverse and remand with directions to dismiss the complaint.

The complaint, filed by a number of bail bondsmen, sought relief under the provisions of C.R.C.P. 65 and 106. The respondent in this case is a judge of the county court for the City and County of Denver who had the responsibility of setting the terms, conditions, and amount of bail for criminal defendants who appeared before him for the advisement of rights. On or about November 1, 1973, the respondent judge implemented a pre-trial release program in the county court in which certain defendants were allowed to deposit a sum of cash equal to 10% of the total amount of their bail as a condition for pre-trial release. *See* section 16-4-104, C.R.S. 1973.

More than two years after the program was instituted by the county court, suit was filed in the district court and an injunctive order issued prohibiting the continuation of the county court's pre-trial release program.

The petitioning bail bondsmen are regulated by the State Insurance Commission and pay license fees pursuant to sections 12-7-101, *et seq.*, C.R.S. 1973. The bondsmen are permitted by section 12-7-108, C.R.S. 1973, to charge a premium or fee not to exceed 10% of the amount of the bail bond. The bail bondsmen claim that they were driven to the brink of bankruptcy by the program instituted by the county judge and that they were, therefore, entitled to relief.

Appellant's mail allegation of error concerns the trial court's failure to dismiss this case for lack of standing. We take this opportunity to review and rule with respect to the standing doctrine.

A brief consideration of precedent will facilitate understanding of the rule we adopt here. The United States Supreme Court, in *Tennessee Electric Power Co. v. Tennessee Valley Authority*, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1938), held that the basic requirements of standing were injury in fact to a legal right protected either by statute or constitutional provision. In *Tennessee Electric*, eighteen corporations which generated and distributed electricity brought suit to restrain the T.V.A. from generating electricity pursuant to Congressional Act. The Supreme Court dismissed the action for lack of standing, holding that mere injury from competition by a government agency was insufficient to confer standing:

"The appellants invoke the doctrine that one threatened with direct and special injury by the act of an agent of the government which, but for statutory authority for its performance, would be a violation of his legal rights, may challenge the validity of the statute in a suit against the agent. The principle is without application unless the right invaded is a legal right — one of property, one arising out of contract, one protected against tortious invasions, or one founded on a statute which confers a privilege. . . ."

An example of the approach to standing taken in the federal courts under *Tennessee Electric Power Co. v. Tennessee Valley Authority, supra,* is *Ex-Cell-O Corporation v. City of Chicago,* 115 F.2d 627 (7th Cir. 1940). Ex-Cell-O Corporation brought suit against the City of Chicago to obtain a declaratory judgment that a Chicago ordinance did not prohibit the use of paper milk containers, or, alternatively, to declare the ordinance to be invalid. The court held that the plaintiff lacked standing to challenge the ordinance, because the injury suffered was not a direct result of government action:

"[T]he ordinance complained of or the administrative acts of defendants in interpretation and administration thereof, in no wise forbid such manufacture and sale. The act, as interpreted by defendants, is asserted by them to forbid the use of paper milk bottles in Chicago. Defendant is free to manufacture and to sell such bottles wherever it may desire, even in Chicago. Obviously, few, if any, persons will purchase them for use there, but that result we deem incidental, consequential, and indirect. Were plaintiff forbidden to manufacture bottles in Chicago, the effect upon its business would be direct and inevitable.

"Thus it is apparent that inevitable financial pecuniary damage is not the test of the sufficiency of plaintiff's interest. . . . Rather the whole question is whether the damage claimed springs directly to plaintiff from defendants. If it is incidental, if it is indirect, defendants may not invoke the court's jurisdiction."

■ The standing tests expressed in the above cases no longer are employed in the federal courts. The United States Supreme Court rejected these earlier standing formulas and announced a two-pronged approach in *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The two requirements which must be satisfied are: (1) the plaintiff must allege that the challenged action has caused him injury in fact, and (2) the interest sought to be protected must arguably be within the zone of interest to be protected or regulated by the statute in question. The first is constitutionally mandated by Article III's restriction of court jurisdiction to "case" or "controversy." *U.S. Const.,* Art. III. The second is a prudential rule of standing based on judicial self-restraint.

In *Data Processing,* the Supreme Court held that the standing inquiry was preliminary to and separate from the decision on the merits. The "legal interest" approach of *Tennessee Electric, supra,* was, therefore, inappropriate:

"The 'legal interest' test goes to the merits. The question of standing is different. It concerns, apart from the 'case' or 'controversy' test, the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. . . ."

The Supreme Court of the United States has reaffirmed the validity of the tests established in *Data Processing* in its most recent standing decision. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). The plaintiffs in *Eastern Kentucky* lacked standing because they failed to satisfy the requirement of injury in fact. In *Eastern Kentucky,* the injury in fact inquiry was divided into two parts: Federal courts must determine, first, whether the action complained of has caused or threatens to cause injury in fact, and secondly, whether the relief sought would remedy the injury. If the plaintiff successfully satisfies these requirements, the duty still exists to show that the injury lies within the zone of interest to be protected.

Although state courts are not subject to the provisions of Article III of the United States Constitution, similar considerations operate to require state courts to apply the standing doctrine. In Colorado, Article III of the Colorado Constitution prohibits any branch of government from assuming the powers of another branch. Courts cannot, under the pretense of an actual case, assume powers vested in either the executive or the legislative branches of government. The importance of this constitutional basis for the standing doctrine was well expressed by the court in *Ex-Cell-O Corporation v. City of Chicago, supra:*

"[T]his power of judicial determination is delicate in character, one to be exercised with caution and care, for it may result in disapproval of acts of the legislative department or of actions of the executive department, both co-ordinate branches of government. This care, this caution has been proverbially observed by the courts, lest in their zeal to prevent what they deem unjust, they exceed their judicial authority, assert an unwarranted superiority over their co-ordinate governmental branches and invade the fields of policy preserved to the legislative arm or the realm of administrative discretion lodged in the executive branch. Obviously such determination may not be had at the suit of any and all members of the public or in an ex parte proceeding. It can be secured only at the suit of one directly and not remotely interested. . . ."

Apart from this constitutional underpinning, judicial self-restraint, based upon considerations of judicial efficiency and economy, also supports the doctrine. *Association of Data Processing Service Organizations, Inc. v. Camp, supra.*

In *Data Processing, supra,* and its progeny, the Supreme Court of the United States characterized the standing inquiry as being separate from the merits of the case. As noted above, it was for this reason that the "legal interest" test was replaced by the zone of interest test. In our view, a decision on the merits is always inextricably tied to every case which involves the issue of standing. When standing is in issue, the broad question is whether the plaintiff has stated a claim for relief which should be entertained in the context of a trial on the merits. If a person suffers no injury in fact, or suffers injury in fact, but not from the violation of a legal right, no relief can be afforded, and the case should be dismissed for lack of standing.

The typical lawsuit raises three questions: (1) whether the plaintiff was injured in fact, (2) whether the injury was to a legally protected right, and (3) whether the injury resulted from the alleged action of the defendant. Courts in different jurisdictions may choose to address any or all of these questions as part of the inquiry on standing. But we deem the more reasonable approach to be to address only the first two questions in the context of standing. Those two questions can be decided by the court as a matter of law in the preliminary inquiry on standing. The third question is properly reserved for the trier of fact and is the primary question to be resolved on the merits.

The proper inquiry on standing is whether the plaintiff has suffered injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions. If he has not, standing does not exist, and the case must be dismissed. If he does, standing exists, and the case must proceed to judgment on the merits. In this context, judgment on the merits imports a determination pursuant to due process that the injury in fact to plaintiff's legally protected right resulted from the alleged action of the defendant.

In this case, the bail bondsmen failed to satisfy either of the requirements relating to standing which are set forth in this opinion. First, there is no injury in fact, since the injury allegedly suffered by the bail bondsmen is indirect and incidental. Although the pre-trial release program may affect the business of the bail bondsmen as a practical matter, it does so only indirectly by permitting criminal defendants to choose amongst an increased number of bail alternatives. The bail bondsmen are not prohibited by the new program from serving as sureties for any defendant who may choose to seek their services. Indirect and incidental pecuniary injury of this sort is insufficient to confer standing. *Ex-Cell-O Corporation v. City of Chicago, supra; Silver State Council No. 1 v. Rhodes, et al.,* 7 Colo. App. 211, 43 P. 451 (1895).

Secondly, the bail bondsmen have not established that their alleged injury was to a legal right protected by statutory or constitutional

provision. The statutory provisions concerning bail do not purport to vest any persons other than criminal defendants with any legal rights in the determination of the terms, amount, or conditions of bail. Section 16-4-101, *et seq.*, C.R.S. 1973. Therefore, the county court's decision to formulate bail procedure does not confer standing on the bail bondsmen, since they have no legal interest in those procedures. Indeed, this action is an attempt, by persons without any protectable legal interest, to interfere with the manner in which the court dispatches its own affairs.

Since the petitioners lacked standing, the injunctive and prohibitory order issued by the district court must be set aside. *Raymond v. District Court*, 184 Colo. 13, 518 P.2d 286 (1974); *Board of County Comm'rs v. Love*, 172 Colo. 121, 470 P.2d 861 (1970).

Accordingly, the injunctive order and judgment are reversed, and the cause is remanded with directions to dismiss the complaint.

MR. JUSTICE LEE and MR. JUSTICE CARRIGAN do not participate.