### No. 79SC15

**Earl F. Dodge, John Lyons, Mary Rita Urbish, Dorothy J. Byrne, Doris E. Danahey, Paul Enockson, Norma J. Kelly, John A. Soelberg, Steven J. Wagner, Ronald D. Slater, Mary S. Meyers, Michael B. Sellers and Don MacManus, on behalf of themselves and all others similarly situated v. The Department of Social Services of the State of Colorado, the State Board of Social Services of the State of Colorado and Armando Atencio, Executive Director of the Department of Social Services of the State of Colorado**

(600 P.2d 70)

Decided September 24, 1979.

Albert T. Frantz, Charles J. Onofrio, for plaintiffs-appellants.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, David K. Rees, Assistant Attorney General, for defendants-appellees.

*En Banc.*

JUSTICE ROVIRA delivered the opinion of the Court.

This is an action brought in the Denver District Court by the appellants to enjoin the allegedly unconstitutional expenditure of public funds. The complaint alleged that the appellants were taxpayers and citizens of the State of Colorado, that public funds were being used to finance non-therapeutic abortions and that such expenditures were in contravention of

Article V, Section 33 (1978 Supp.),[1] of the Colorado Constitution. The complaint further alleged that the appellees have no statutory authority, with or without specific appropriation by the legislature, to use public funds for abortions. The appellants have asked that the appellees be enjoined from using such funds for the payment of abortions and that the court enter a declaratory judgment or decree determining that their use for abortions is illegal.

The appellees moved to dismiss the complaint on the ground that appellants lacked standing to maintain the action. The trial court, on the authority of *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977), granted the motion. The appellants appealed that judgment to the Colorado Court of Appeals. The appellees, with the consent of the appellants, sought a writ of certiorari from this court pursuant to C.A.R. 50. We granted the writ, and for the reasons hereafter stated we hold that the appellants do have standing as taxpayers to maintain this action.

The only issue to be addressed on this appeal is: Under what circumstances, if any, does the taxpayer/citizen have standing to challenge an allegedly unlawful expenditure of public funds?

■ This court has held on several occasions that a taxpayer has standing to seek to enjoin an unlawful expenditure of public funds. *Johnson-Olmsted Realty Company v. City and County of Denver,* 89 Colo. 250, 1 P.2d 928 (1931); *Leckenby v. The Post Company,* 65 Colo. 443, 176 P. 490 (1918); *Packard v. Board of County Commissioners,* 2 Colo. 338 (1874).

In 1977 we decided *Wimberly v. Ettenberg, supra,* a case in which bail bondsmen, claiming economic injury, sought to enjoin the county court from allowing defendants to deposit cash equal to ten percent of their bail as a condition for pretrial release.

■ In that case, after reviewing past decisions of the United States Supreme Court, we announced a two-step analysis to be followed in order to resolve issues on standing: (1) did the plaintiff incur an injury in fact?[2] (2) if so, was it to a legally protected interest encompassed by statutory or constitutional provisions which allegedly have been violated?[3]

We found that the plaintiffs in *Wimberly* failed to meet either of these criteria because (1) their alleged economic injury was too indirect

---

[1] *Colo. Const.* Art. V, Sec. 33 (1978 Supp.):
"No moneys in the state treasury shall be disbursed therefrom by the treasurer except upon appropriations made by law, or otherwise authorized by law, and any amount disbursed shall be substantiated by vouchers signed and approved in the manner prescribed by law."
[2] *See Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).
[3] *See Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

and incidental to be an injury in fact, and (2) they did not establish that their alleged injury was to a legal right protected by statutory or constitutional provision.

Applying the *Wimberly* test to the case *sub judice*, we note that the second criterion has been met by the averment that the allegedly wrongful expenditure of funds violated *Colo. Const.* Art. V, Sec. 33 (1978 Supp.), and that the appellees had no statutory authority to expend public funds for abortions. Our inquiry thus turns on whether the first criterion was met; *i.e.*, whether the expenditure constituted an injury in fact to these plaintiffs.

Plainly, there is no direct economic injury in fact here. *Wimberly, supra.* However, injury in fact may be found in the absence of direct economic injury. *See United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). Two cases considered by this court, and another addressed by the United States Supreme Court, reflect that principle and are persuasive in our resolution of the controversy in this case.

In *Howard v. City of Boulder,* 132 Colo. 401, 290 P.2d 237 (1955), a taxpayer brought an action challenging the constitutional validity of a proposed amendment to the Boulder city charter. Although the proposal had no adverse economic effect on the plaintiff, we found that he had standing because of his interest that the form of government under which he lived be in accord with the state constitution.

More recently, in *Colorado State Civil Service Employees Association v. Love,* 167 Colo. 436, 448 P.2d 624 (1968), state employees challenged the constitutional validity of the Administrative Reorganization Act of 1968. We found that the plaintiffs there had standing because of their interest in ensuring that the organization of government conforms to the constitution of this state. In that case, we stated:
"The rights involved extend beyond self-interest of individual litigants and are of 'great public concern.' Petitioners state a justiciable controversy, because they claim violation of the Civil Service Amendment [to the state constitution]. . . ."

Finally, in *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), taxpayers challenged the expenditure of federal funds to parochial schools, alleging that such an action violated the First Amendment to the United States Constitution. The United States Supreme Court determined as a test for standing that the taxpayer must establish: (1) a nexus between his status as a taxpayer and the government action, and (2) a nexus between his status as a taxpayer and a specific constitutional provision which allegedly has been violated. The Court held that the plaintiffs had standing because they alleged that the administrative expenditure of funds violated a specific constitutional provision. Such an averment satisfied the two-step standing analysis utilized by the Court in that case,

which was similar to the criteria adopted by this court in *Wimberly, supra*.

We thus hold that the appellants have standing to litigate the issue of whether there has been a violation of *Colo. Const*. Art. V, Sec. 33 (1978 Supp.), and whether the appellees have the statutory authority to use public funds for nontherapeutic abortions. However, we emphasize that nothing in this decision should be interpreted to indicate this court's opinion as to the merits of the substantive arguments of the appellants.

Reversed and remanded for further proceedings.

JUSTICE ERICKSON and JUSTICE DUBOFSKY specially concur.

JUSTICE DUBOFSKY specially concurring:

I am concerned about the broad sweep of the majority opinion which, by lowering standing barriers to citizen and taxpayer suits, threatens to transform the courts of this state into forums in which to air generalized grievances about the conduct of state government. While I concur in the result reached by the majority, concluding that plaintiffs have standing to pursue their claims, I do so on narrower grounds.

Plaintiff citizen-taxpayers complain that funds expended by the Department of Social Services (Department) for abortions have never been specifically earmarked for that purpose by the Legislature in contravention of Art. V, Sec. 32 and Sec. 33 of the Colorado Constitution.[1] As a corollary they complain that the Department disbursed the funds without statutory authority.

The majority find that plaintiffs here have standing based upon this Court's earlier decision in *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977). In *Wimberly* this Court said that the proper inquiry on standing is "whether the plaintiff has suffered injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions." 194 Colo. at 168, 570 P.2d at 539. This inquiry comprises two steps: first, whether plaintiff was injured in fact; second, whether a legally protected interest was invaded. Here the majority finds that a legally protected interest is drawn into question by the allegation that the

---

[1] *Colo. Const*., Art. V
Sec. 32: "The general appropriation bill shall embrace nothing but appropriations for the expense of the executive, legislative and judicial departments of the state, state institutions, interest on the public debt, and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject."
Sec. 33: "No moneys in the state treasury shall be disbursed therefrom by the treasurer except upon appropriations made by law, or otherwise authorized by law, and any amount disbursed shall be substantiated by vouchers signed and approved in the manner prescribed by law." (See 1978 Supp.)

expenditures violated *Colo. Const.* Art. V, Sec. 33. It then concludes that this same allegation satisfies the first requirement, deciding that infringement of a constitutional guarantee injures the general citizenry's interest in constitutional governance. The Court's reasoning collapses *Wimberly's* two-part standing inquiry into a single question: has a citizen-taxpayer averred a violation of a specific constitutional duty or prohibition? If he has, he has standing to secure judicial review of any legislative or executive action to which he objects.

Whether a constitutional guarantee can properly be understood to confer a right to relief — and hence standing — on a particular class of plaintiffs is a difficult question. I think, rather than conferring standing on all citizen-taxpayers who complain of constitutional improprieties, we should approach each case mindful of the purpose contemplated by the provision under which the action has been brought.

In the ordinary case, a plaintiff who demonstrates injury in fact to an interest protected by the substantive law in question will be entitled to have the court decide the merits of the dispute. *Wimberly v. Ettenberg.* However, neither a concrete personal injury nor a clearly recognizable legal interest is always discernable in suits challenging the constitutionality of legislative or executive actions. Typical of cases in this category are public actions brought, as was this case, to vindicate rights shared in substantially equal measure by all citizens or members of the tax-paying public.

Suits such as these highlight the tension between the judiciary's limited powers and its role as a check on the co-ordinate branches of government. They tempt the courts to overlook prudential limitations on standing, rooted in the separation of powers, in order to redress otherwise nonjusticiable wrongs.[2] Confronted by this dilemma, the United States Supreme Court has consistently rejected the reasoning adopted by the majority.

"In some fashion, every provision of the Constitution was meant to serve the interests of all . . . . [However,] the proposition that all constitutional provisions are enforceable by any citizen simply because citizens are the ultimate beneficiaries of those provisions has no boundaries."

---

[2] "Although state courts are not subject to the provisions of Article III of the United States Constitution, similar considerations operate to require state courts to apply the standing doctrine. In Colorado, Article III of the Colorado Constitution prohibits any branch of government from assuming the powers of another branch. Courts cannot, under the pretense of an actual case, assume powers vested in either the executive or legislative branches of government. . . . '[T]his caution has been proverbially observed by the courts, lest in their zeal to prevent what they deem unjust, they exceed their judicial authority, assert an unwarranted superiority over their co-ordinate governmental branches and invade the fields of policy preserved to the legislative arm or the realm of administrative discretion lodged in the executive branch.'" *Wimberly v. Ettenberg,* 194 Colo. at 167, 570 P.2d at 538.

*Schlesinger v. Reservists' Committee to Stop the War,* 418 U.S. 208, 227, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706 (1974); *see United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974), *id.,* (Powell, J. concurring); *see also Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (Harlan, J. dissenting). I believe that the majority opinion in this case also "has no boundaries." Giving every citizen or taxpayer standing to litigate his personal views of constitutionality, legality or the public interest

"would create the potential for abuse of the judicial process, distort the role of the Judiciary in its relationship to the Executive and the Legislature and open the Judiciary to an arguable charge of providing 'government by injunction.'"

*Schlesinger v. Reservists' Committee to Stop the War,* 418 U.S. at 222,94 S.Ct. at 2933.

On the other hand, courts cannot abdicate their responsibility to redress constitutional wrongs simply because the interest invaded is shared by all or substantially all citizens. Since my principal objection to unlimited citizen-taxpayer standing is based on the doctrine of separate powers embodied in *Colo. Const.* Art. III, I would adopt a standing inquiry suggested by *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Like the majority, I believe that the injury required by *Wimberly v. Ettenberg* "may exist solely by virtue of 'statutes [and constitutional provisions] creating legal rights, the invasion of which creates standing.'" *Warth v. Seldin,* 422 U.S. at 500, 95 S.Ct. at 2206. I do not, however, conclude that citizens or taxpayers *ipso facto* have standing to complain of every alleged injury to their interest in constitutional governance. Instead, I would inquire "whether the constitutional . . . provision on which the claim rests *properly can be understood* as granting persons in the plaintiff's position right to judicial relief." *Id.* (emphasis added). Because an affirmative answer to this question diminishes the risk that adjudication may intrude upon the constitutional prerogatives of coordinate branches, a relaxation of barriers to citizen-taxpayer standing sometimes will be appropriate.

In this case the standing issue should be resolved by asking whether *Colo. Const.* Art. V, Sec. 32 and Sec. 33 properly can be understood as granting citizens or taxpayers a right to judicial relief. The legislative appropriation procedures prescribed by those sections guard against improper executive expenditures of tax revenue by ensuring that the purposes for which monies are spent are subject to legislative and public scrutiny. *See In re House Bill No. 168,* 21 Colo. 46, 39 P. 1096 (1895). While "[o]ur system of government leaves many crucial decisions to the political processes," *Schlesinger v. Reservists' Committee to Stop the War,* 418 U.S. at 227, 94 S.Ct. at 2935, a right to judicial relief may be implied when the injury, "however widely inflicted, is such as to impede the

effective operation of majoritarian processes." *L. Tribe, American Constitutional Law* §3-20 (1978). The scrutiny of appropriations measures contemplated by Sec. 32 and Sec. 33 helps to assure executive and legislative accountability to the electorate — an objective which is frustrated if the legislature fails to explicitly appropriate monies for the purposes for which they are being spent. *See United States v. Richardson* (Douglas, J. dissenting). I, therefore, am satisfied that plaintiffs have standing to challenge the Department's expenditures for abortions as unlawful under *Colo. Const.* Art. V, Sec. 32 and Sec. 33.

This does not mean that the legislature must earmark or line-item every dollar expended; that decision awaits an adjudication on the merits. It means only that Section 32 and Section 33, properly understood, grant citizens and taxpayers a right to judicial interpretation of the provision: "No moneys in the state treasury shall be disbursed therefrom by the treasurer except upon appropriations made by law, or otherwise authorized by law. . . ." *Colo. Const.,* Art. V, Section 33 (1978 Supp.).

JUSTICE ERICKSON has authorized me to say that he joins in this concurrence.