The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF ADAMS, State of Colorado; Peter M. Mirelez, John Campbell and James Covey, as members of the Board of County Commissioners of the County of Adams, State of Colorado; David Berger; Warren A. Moreau; Harry Fukaye; James Fukaye; Isamu Fukaye and Henderson Associates, Ltd., a Limited Partnership; Adams County Planning Commission; Lewis W. Stuckert, Walter Fischer, Pauline Carlock, Ray Romero, Alex Ramirez, as members of the Adams County Planning Commission, Petitioners,

v.

CITY OF THORNTON, Colorado, a Municipal Corporation of the State of Colorado, Respondent.

Nos. 79SC112, 79SC113.

Supreme Court of Colorado,
En Banc.

June 8, 1981.

S. Morris Lubow, County Atty., Linda Donnelly, John E. Bush, Jr., Asst. County Attys., Brighton, for petitioners Board of County Com'rs of the County of Adams, State of Colo., Peter M. Mirelez, John Campbell, and James Covey, as members of the Board of County Commissioners of the County of Adams, State of Colorado.

Berger & Rothstein, P. C., David Berger, Kent Denzel, Commerce City, for petitioners David Berger, Warren A. Moreau, Harry, James and Isamu Fukaye and Henderson Associates, Ltd., a Limited Partnership.

Daniel, McCain & Brown, Leonard H. McCain, City Atty., Steven N. Koeckeritz, Asst. City Atty., Brighton, for respondent.

LOHR, Justice, delivered the Opinion of the Court.

We granted certiorari to review the decision of the Court of Appeals in *City of Thornton v. Board of County Commission-*

*ers*, 42 Colo.App. 102, 595 P.2d 264 (1979), holding that the City of Thornton (City) has standing to challenge actions of the Adams County Planning Commission (Planning Commission) and the Board of County Commissioners of Adams County (Board) in amending the county's comprehensive plan and in rezoning certain property which is adjacent to the City boundary and to certain City-owned property. We now affirm the Court of Appeals' decision.

The City of Thornton filed two actions in the Adams County District Court, naming as defendants the Board and its individual members, the Planning Commission and its individual members, and the owners of the rezoned land (we refer to all the defendants collectively as petitioners). In the first, brought under C.R.C.P. 57 and 106, the City challenged the action of the Planning Commission in adopting an amendment to Adams County's comprehensive plan to permit development of a "research and development type employment park" as a planned unit development on certain lands in the county adjacent to the City boundary. In the second, brought under C.R.C.P. 106, the City challenged the action of the Board in approving the subsequent rezoning of those same lands from MC (Mineral Conservation) and A–1 (Agricultural) to PUD (Planned Unit Development) for research and development.

In each case the defendants moved to dismiss the complaint, asserting, among other grounds, that the City lacks standing to bring the action. The district court agreed and dismissed both actions. On appeal, the Court of Appeals held that the City's pleaded averments that it owned property adjacent to and in the immediate vicinity of the rezoned property and that the City's property was reduced in value by reason of the amendment of the comprehensive plan and the later rezoning were sufficient to confer standing on the City to

1. The Court of Appeals issued a single opinion covering the two appeals. The cases were consolidated before us.

2. No regional planning commission or regional master plan is centrally involved in the issues

contest the legality of the Adams County actions.[1]

For convenience, we sometimes refer to the property which was rezoned as the PUD property and to the adjacent City-owned property as the City property. We also refer to Adams County's comprehensive plan as its master plan, the term used in our statutes. *See* section 30–28–106, C.R.S. 1973 (1977 Repl.Vol. 12) (1980 Supp.).

An outline of the relevant statutory framework for county planning and zoning will provide a useful general background for consideration of the issues which we must decide.

Each board of county commissioners is authorized "to provide for the physical development of the unincorporated territory within the county and for the zoning of all or any part of such unincorporated territory . . ." Section 30–28–102, C.R.S. 1973 (1977 Repl.Vol. 12). The board of county commissioners is authorized to appoint members of a county planning commission. Section 30–28–103, C.R.S. 1973 (1977 Repl.Vol. 12) (1980 Supp.).

The county planning commission has the duty to make and adopt a master plan for the physical development of the unincorporated territory of the county, showing the commission's recommendations for such development.[2] Section 30–28–106(1) and (3), C.R.S. 1973 (1977 Repl.Vol. 12) (1980 Supp.). In the preparation of such a plan, the commission must make careful and comprehensive surveys and studies of the existing conditions and probable future growth of the territory within its jurisdiction to accomplish purposes expressed at length in the statute. Section 30–28–107, C.R.S. 1973 (1977 Repl.Vol. 12) (1980 Supp.). The commission must certify a copy of the master plan to the board of county commissioners. Section 30–28–109, C.R.S. 1973 (1977 Repl. Vol. 12).

before us in this case. *See* sections 30–28–105, 106, C.R.S. 1973 (1977 Repl.Vol. 12) (1980 Supp.). Therefore, the relationship between the regional and county planning processes are not described in this summary.

The commission may, and on order of the board of county commissioners must, make a zoning plan, including a zoning resolution and maps, for zoning all or any part of the unincorporated territory within the county. Section 30–28–111(1), C.R.S. 1973 (1977 Repl.Vol. 12) (1980 Supp.). The county planning commission then is to certify a copy of the zoning plan to the board of county commissioners, which in turn must give public notice, hold a public hearing, and then may adopt zoning resolutions. Section 30–28–112, C.R.S. 1973 (1977 Repl. Vol. 12).[3] The board of county commissioners may make no substantial change in the zoning resolution or map originally certified, and may make no change after adoption, unless the proposed change is first submitted to the county planning commission for its approval, disapproval or suggestions. Sections 30–28–112 and 116, C.R.S. 1973 (1977 Repl.Vol. 12).

Against this background, we consider the issues before us.

The petitioners assert that the trial court was correct in concluding that the City lacks standing to contend that the amendment to the master plan and the subsequent rezoning were accomplished in violation of applicable legal standards and requirements. We disagree and so affirm the decision of the Court of Appeals, which reversed the trial court's judgments.[4]

## I.

In *Wimberly v. Ettenberg,* 194 Colo. 163, 168, 570 P.2d 535, 539 (1977), we held that "[t]he proper inquiry on standing is whether the plaintiff has suffered injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions." *Accord, City of Colorado Springs v. State of Colorado,* Colo., 626 P.2d 1122 (1980); *Denver Urban Renewal Authority v. Byrne,* Colo., 618 P.2d 1374 (1980); *Dodge v. Department of Social Services,* 198 Colo. 379, 600 P.2d 70 (1979). The City meets that test in this case.

Thornton is a home-rule city. As such, it has the power to "purchase, receive, hold, and enjoy or sell and dispose of, real and personal property...." *Colo.Const.* Art. XX §§ 1, 6. In exercise of that power the City owns the City property which is contiguous to the PUD property.

In its complaints in the consolidated cases before us, the City avers that the amendment to the Adams County master plan and the subsequent rezoning of the PUD property have caused the City property to diminish in value.[5] The City further avers that the master plan amendment and the rezoning were wrongful in that they were accomplished in violation of certain applicable legal requirements.[6] The trial court concluded that the City lacks standing to

---

**3.** The relationship between the master plan and the zoning resolution is explained in part in *King's Mill Homeowners Ass'n., Inc. v. City of Westminster,* 192 Colo. 305, 557 P.2d 1186 (1976).

**4.** In their briefs the parties address the question whether the amendment of the master plan is subject to judicial review. The trial court did not rule on this question and the Court of Appeals did not consider it. The question is not properly before us, so we express no opinion on it.

**5.** The complaints do not state whether the City property is within the limits of the City in whole or in part. From the briefs it appears that the City property in within the City.

**6.** The amendment to the master plan is challenged for reasons including failure to refer it to the regional planning commission, *see* section 30–28–110(2), C.R.S. 1973 (1977 Repl.Vol.

12), failure of the county planning commission to conduct necessary comprehensive surveys and studies, *see* section 30–28–107, C.R.S. 1973 (1977 Repl.Vol. 12) and absence of supporting evidence that it would substantially further the statutorily designated purposes, *see* section 30–28–107, C.R.S. 1973 (1977 Repl.Vol. 12).

The rezoning is challenged for reasons including allegedly arbitrary and capricious action in its adoption, failure of the Board to make written supporting findings, failure to refer the proposed change to the regional planning commission, *see* section 30–28–110(2), C.R.S. 1973 (1977 Repl.Vol. 12), lack of evidence that it would substantially further the statutorily designated purposes, *see* sections 30–28–115 and 24–67–101 *et seq.,* C.R.S. 1973 (1977 Repl.Vol. 12), illegal contract zoning, illegal spot zoning, failure to give adequate notice of intended uses and failure to follow the county zoning regulations in adopting the rezoning.

assert the alleged violations and granted the petitioners' motions to dismiss the complaints.

■ In considering a motion to dismiss, all averments of material fact in a complaint must be accepted as true. *E. g., Martinez v. Southern Ute Tribe*, 150 Colo. 504, 374 P.2d 691 (1962). Thus, we accept as factual the City's pleaded statements that the changes in the master plan and in the zoning caused the City property to lose value.

It cannot be doubted that diminution of value of the City property constitutes injury in fact. Therefore, if the City's interest in maintaining the value of its property is legally protected, the *Wimberly* test for standing has been met.

■ We have held that an owner of property adjacent to rezoned land has standing to challenge rezoning which adversely affects his property. *Dillon Companies v. City of Boulder*, 183 Colo. 117, 515 P.2d 627 (1973); *accord, Bedford v. Board of County Commissioners*, 41 Colo.App. 125, 584 P.2d 90 (1978); *Snyder v. City Council*, 35 Colo. App. 32, 531 P.2d 643 (1974). Implicit in these decisions is the conclusion that a complaining property owner, such as the City here, has a legally protected interest in insulating its property from adverse effects caused by the legally deficient rezoning of adjacent property.

Unless a different result is required because the City property is within the City limits, while the rezoning was accomplished by a separate governmental entity and is limited to property outside the City limits, the City should be recognized to have standing under *Wimberly* to challenge the County's actions. We now consider whether standing must be denied to the City because of an asserted disability of one governmental entity to challenge the zoning decisions of another or because of an asserted principle that property owners in one jurisdiction lack the right to challenge zoning changes made by an adjoining jurisdiction.

II.

■ The General Assembly has given the counties paramount authority to provide for the zoning of unincorporated territory within their boundaries. By section 30–28–102, C.R.S. 1973 (1977 Repl.Vol. 12), the power to zone that territory is granted to the respective boards of county commissioners. Although a municipality may adopt a master plan which includes "any areas outside its boundaries" which bear relation to municipal planning, that authority is expressly "subject to the approval of the governmental body having jurisdiction thereof," here, Adams County. Section 31–23–206, C.R.S. 1973 (1977 Repl.Vol. 12). It is clear, therefore, that a city may not interfere with zoning adopted by a county for unincorporated county territory pursuant to statutory authority, regularly exercised. The City does not question that principle. Its contention is that the Planning Commission and the Board violated statutorily-mandated procedures and other legal standards in adopting the amendment to the master plan and in rezoning the PUD property. Our statutes do not provide whether the City has standing to assert such a grievance against a county. Therefore, we must look elsewhere for principles to resolve the question.

We start with the fundamental fact that Thornton is a home-rule city. The Colorado Constitution imposes constraints on legislative action impinging on the interests of home-rule cities.

■ Although the legislature has full power, within constitutional limits, to enact statutes dealing with matters of statewide concern, a home-rule city is not inferior to the General Assembly with respect to local and municipal matters. *City of Colorado Springs v. State of Colorado, supra; Denver Urban Renewal Authority v. Byrne, supra; Four-County Metropolitan Capital Improvement District v. Board of County Commissioners*, 149 Colo. 284, 369 P.2d 67 (1962). A home-rule city's powers with respect to local and municipal matters have their source in our state constitution. *Colo. Const.* Art. XX, § 6. While planning and

zoning for lands outside the boundaries of a home-rule city may be matters of statewide concern, the preservation of the value of city property is a local and municipal matter. *See Colo.Const.* Art. XX, § 6. It is an incident of the City's express constitutional powers to hold and enjoy property. *See Colo.Const.* Art. XX, §§ 1, 6.

■ Even though county planning and zoning regulations are of statewide concern, they may adversely affect matters of local and municipal concern. There is no dispute that such is the case here. Under such circumstances, we conclude that the Colorado Constitution mandates that a home-rule city be given the right to challenge the legality of the county's master plan and zoning ordinances in court. *See City of Colorado Springs v. State of Colorado, supra*, in which we found that the budgeting and taxation powers of a home-rule city give it standing to challenge the imposition of a large financial obligation upon the city by the legislature incident to a plan to make firemen's pension funds actuarially sound, a matter of statewide concern.

Additionally, we find no reason in policy to deny the landowner City the same right to challenge illegal zoning as we have accorded private landowners. *Dillon Companies v. City of Boulder, supra; Bedford v. Board of County Commissioners, supra; Snyder v. City Council, supra.* This is not a case in which the City wishes to challenge the County's discretionary land use decisions. The City seeks to question only the County's compliance with applicable legal standards in exercising the County's zoning powers. Recognition of standing in the City to prove its claims in this case will not permit this home-rule city to second-guess land use decisions properly within the purview of the County's discretion.

We hold that the legislature has not denied, and constitutionally could not deny, the home-rule city of Thornton the power to protect its property against loss of value caused by a county's illegal zoning of nearby property by testing the legality of that zoning in court.[7]

## III.

■ The County also supports its contention that Thornton is without standing by urging that no owner of property within the territorial limits of one governmental entity can challenge the validity of the manner in which master plans and zoning ordinances are adopted by another governmental entity, even though the parcels be contiguous. In *Clark v. City of Colorado Springs*, 162 Colo. 593, 428 P.2d 359 (1967), we so held. However, that case does not mention our closely related holding in *Roosevelt v. Beau Monde Co.*, 152 Colo. 567, 384 P.2d 96 (1963), which is logically inconsistent with *Clark v. City of Colorado Springs, supra.*

In *Roosevelt v. Beau Monde Co., supra*, we permitted persons residing and owning property in Cherry Hills Village to intervene in an action brought by a contractor to compel the City of Englewood to issue a building permit for a regional shopping center on certain land in Englewood. In defense, Englewood asserted that the property was zoned for residential use. The contractor contested the validity of that zoning. In granting the Cherry Hills Village landowners permission to intervene, we said:

"Thus we conclude that these residents of Cherry Hills Village are without any representation. They own property immediately adjacent to and abutting on the subject property. Building of the proposed shopping center confers similar if not identical benefits, or imposes similar if not identical detriments on the owners of abutting property in Englewood or Cherry Hills Village. Clearly those residing in Cherry Hills Village are entitled to

---

7. We need not and do not decide today whether a statutory city in the position of the City of Thornton here would have standing to challenge amendments to a county's master plan and zoning resolution.

intervention and representation by counsel of their choosing." [8]

152 Colo. at 574, 384 P.2d at 100.

As the Court of Appeals notes in its opinion which we review here, by the weight of authority in other jurisdictions an owner of property adjacent to property being rezoned but not within the territory of the zoning authority has standing to challenge the rezoning. *See City of Thornton v. Board of County Commissioners*, 42 Colo.App. 102, 595 P.2d 264 (1979). In support of that proposition the Court of Appeals lists the following authorities:

"*See Scott v. Indian Wells*, 6 Cal.3d 541, 99 Cal.Rptr. 745, 492 P.2d 1137 (1972); *Hamelin v. Zoning Board*, 19 Conn.Sup. 445, 117 A.2d 86 (1955); *Wittingham v. Woodridge*, 111 Ill.App.2d 147, 249 N.E.2d 332 (1969); *Koppel v. City of Fairway*, 189 Kan. 710, 371 P.2d 113 (1962); *Allen v. Coffel*, 488 S.W.2d 671 (Mo.App.1972); *Dahman v. Ballwin*, 483 S.W.2d 605 (Mo. App.1972); *Bagley v. County of Sarpy*, 189 Neb. 393, 202 N.W.2d 841 (1972); *Roselle Park v. Union*, 113 N.J.Super. 87, 272 A.2d 762 (1970); *Borough of Creskill v. Borough of Dumont*, 28 N.J.Super. 26, 100 A.2d 182 (1953), aff'd 15 N.J. 238, 104 A.2d 441; *Weinberg v. Clarkstown*, 78 Misc.2d 464, 357 N.Y.S.2d 332 (1973). *But see Arlington Heights v. Cook County*, 133 Ill.App.2d 673, 273 N.E.2d 706 (1971); *Mt. Prospect v. Cook County*, 113 Ill. App.2d 336, 252 N.E.2d 106 (1969); *Cablevision-Division of Sammons Communications Inc. v. Zoning Hearing Board*, 13 Pa.Cmwlth. 232, 320 A.2d 388 (1974). *See also* Annot., 69 A.L.R.3d 805, and Annot., 49 A.L.R.3d 1126; ..."

*Id.* at 104, 595 P.2d at 266.

As the California Supreme Court said in *Scott v. Indian Wells, supra,*

"Certainly it is clear that the development of a parcel on the city's edge will substantially affect the value and usability of an adjacent parcel on the other side of the municipal line.

To hold, under these circumstances, that defendant city may zone the land within its border without any concern for adjacent landowners would indeed 'make a fetish out of invisible municipal boundary lines and a mockery of the principles of zoning.' '[C]ommon sense and wise public policy ... require an opportunity for property owners to be heard before ordinances which substantially affect their property rights are adopted ....' [Citation omitted.] Indeed, the due process clause of the Fourteenth Amendment requires 'at a minimum ... that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing ....' [Citation omitted.]"

*Id.*, 6 Cal.3d at 548–49, 99 Cal.Rptr. at 749, 492 P.2d at 1141. Also recognizing a due process dimension to the question in a case involving a challenge by a municipal corporation to rezoning of land in New York on the basis that it affected adjoining land owned by the municipality in New Jersey is *Town of River Vale v. Town of Orangetown*, 403 F.2d 684 (2d Cir. 1968).

We find *Roosevelt v. Beau Monde Co., supra,* and the authorities cited above in support of the majority rule recognizing standing in parties situated in positions akin to that of the City here, to be persuasive. We conclude that *Clark v. Colorado Springs, supra,* was wrongly decided on the point at issue here and overrule it to that extent.

We affirm the decision of the Court of Appeals.

HODGES, C. J., dissents, and LEE and ROVIRA, JJ., join in dissent.

---

**8.** It is noted in the opinion that the intervenors' property was alleged in their motion to be "within the legal protest zone against zoning of the subject property." 152 Colo. at 590, 384 P.2d at 98. The opinion does not elaborate further on this matter, and it is not mentioned in the discussion of the basis for the court's ruling.

HODGES, Chief Justice, dissents.

The majority today holds that a home-rule city has standing to challenge by court action a county's regulation of unincorporated territory adjacent to city owned property within the municipal boundaries. I respectfully dissent.

Applying the two-prong test to determine whether a party has standing as set forth by this court in *Wimberly v. Ettenberg*, 194 Colo. 163, 570 P.2d 535 (1977), and affirmed in *City of Colorado Springs v. State of Colorado*, Colo., 626 P.2d 1122; *Denver Urban Renewal Authority v. Byrne*, Colo., 618 P.2d 1374 (1980); and *Dodge v. Department of Social Services*, 198 Colo. 379, 600 P.2d 70 (1979), the majority concludes that the City of Thornton (the City) in this case has complained of an injury in fact to a legally protected interest. In my view, the City has not set forth a legally protected interest.[1] A general allegation in the complaint that the value of adjacent city owned property will diminish because of the county's master plan does not constitute a legally protected interest.

Under the test for standing adopted by this court, a complaining party must assert an injury to a "legally protected interest as contemplated by statutory or constitutional provisions. The General Assembly has given the power to control the physical development of unincorporated territory to the respective counties where such land is located. Section 30–28–102, C.R.S. 1973 (now in 1977 Repl.Vol. 12). The board of county commissioners is permitted to appoint a county planning commission which can adopt and modify master plans for the physical development of the unincorporated territory of the county. Sections 30–28–103, 106(1), 108, C.R.S. 1973 (now in 1977 Repl.Vol. 12). A county planning commission is also empowered to adopt a zoning plan for the county's unincorporated territory, subject to the approval of the board of county commissioners. Sections 30–28–111 and 112, C.R.S. 1973 (now in 1977 Repl.Vol. 12). Such a zoning plan would reflect the present permissible uses of property within the territory although it could be amended by the board of county commissioners subject to a proposal by or approval of the amendment by the county planning commission. Section 30–28–116, C.R.S. 1973 (now in 1977 Repl.Vol. 12).

Municipalities have statutory authority to develop their own master and zoning plans. Sections 31–23–206 and 211, C.R.S. 1973 (now in 1977 Repl.Vol. 12). Although the zoning power is limited to the territorial boundaries of the municipality, section 31–23–206 permits the adoption of a master plan to include "any areas outside its boundaries, subject to the approval of the governmental body having jurisdiction thereof." This superiority of control by the county regarding unincorporated territory is strengthened by limiting the power of a municipal planning commission to adopt the county's master plan only to the extent that it "falls within the territory of the municipality." Section 30–28–109, C.R.S. 1973 (now in 1977 Repl.Vol. 12).

From this statutory scheme, it is readily apparent that the General Assembly intended to place the ultimate control over plan-

---

1. The City also asserted as a ground for establishing its standing in this case that its municipal boundary was adjacent to the rezoned property in the county, and that the rezoning would diminish the value of private property within the municipality thereby reducing the tax base, and accordingly the tax revenues of the City. The majority does not address this issue. It is clear, however, that the City does not have standing based on these allegations, as an injury in fact has not been shown.

To constitute injury in fact with reference to private property, there must be an injury directly resulting from the action complained of. *Wimberly v. Ettenberg, supra; Dodge v. De-*

*partment of Social Services, supra.* An injury which is incidental to the action complained of or an indirect result of the action cannot constitute injury in fact. The pecuniary injury the City complains of is indirect and incidental. Although tax revenues may decrease as a result of the depreciated value of the property within the municipal boundaries and adjacent to the rezoned property, it is the landowners themselves who are directly and adversely affected. The injury the City complains of is too remote to confer standing upon the City. *Accord, City and County of Denver v. Board of Commissioners*, 113 Colo. 150, 156 P.2d 101 (1945).

ning and zoning of the county's unincorporated territory exclusively in the county government. This legislative intent was recognized by this court in *Robinson v. City of Boulder,* 190 Colo. 357, 547 P.2d. 228 (1976) wherein we stated:

> "In our view, sections 31–23–106(1) [now section 31–23–206(1)] and 31–23–109 [now section 31–23–209] place the ultimate governmental authority in matters pertaining to land use in unincorporated areas in the county. In effect, a city is given only an advisory role."

Nor is the City conferred a legally protected interest as contemplated by constitutional grant. *Colo.Const.* Art. XX, Sec. 1 confers upon a home rule city the power to "purchase, receive, hold and enjoy, or sell and dispose of, real and personal property . . . ." *See also Colo.Const.* Art. XX, Sec. 6. This constitutional provision confers a legally protected interest upon a home rule city with regard to its local or municipal interests in the acquisition, use, and enjoyment of real property. Regulation of the land use of territory within the municipality boundary of the home rule city clearly implicates a local or municipal concern. The regulation of unincorporated territory outside the municipal boundary by another political subdivision of the state which may adversely affect the value of municipal property within the city's boundary may also be of concern to the city. This concern, however, does not rise to the level of implicating a legally protected interest to challenge the manner in which a neighboring political subdivision regulates the use of territory within its zone of regulatory control. In such instances, the matter goes beyond the concern of the local municipality and becomes a matter of statewide concern. In matters of statewide concern, home rule cities are subject to the will of the General Assembly. *See Davis v. City and County of Denver,* 140 Colo. 30, 342 P.2d 674 (1959). *See generally City of Aurora v. Martin,* 181 Colo. 72, 507 P.2d 868 (1973); *Bennion v. City and County of Denver,* 180 Colo. 213, 504 P.2d 350 (1972); *Vela v. People,* 174 Colo. 465, 484 P.2d 1204 (1971). In this case, as discussed above, the General As-

sembly has given the County the power to regulate the use of its unincorporated territory.

The majority today unnecessarily opens the doors to time-consuming litigation between political entities of the state. The regulation of unincorporated territory within the state of Colorado has been specifically conferred upon the county in which the land is situated. A neighboring city, home-rule or statutory, ought not be permitted to intrude upon the orderly and effective means of land use regulation as envisioned by the statutory scheme adopted by our General Assembly.

I would reverse the judgment of the court of appeals, and hold that the trial court properly dismissed the city's complaints for lack of standing.

I am authorized to say that Justice LEE and Justice ROVIRA join me in the dissent.

