Mark HOTALING, Plaintiff–Appellant,

v.

John HICKENLOOPER, in his official capacity as Governor of the State of Colorado; Christopher E. Urbina, in his official capacity as Executive Director of the Colorado Department of Public Health and Environment; Planned Parenthood of the Rocky Mountains Services Corporation, a Colorado nonprofit corporation; and Boulder Valley Women's Health Center, Inc., a Colorado nonprofit corporation, Defendants–Appellees.

No. 10CA0364.

Colorado Court of Appeals, Div. III.

June 23, 2011.

Arrington Law Office, Barry K. Arrington, Centennial, Colorado, for Plaintiff–Appellant.

John W. Suthers, Attorney General, Monica M. Márquez, Deputy Assistant Attorney General, Anne Baudino Holton, First Assistant Attorney General, Joshua G. Urquhart, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees John Hickenlooper and Christopher E. Urbina.

Heizer, Paul LLP, Dean C. Heizer, Kevin C. Paul, Cynthia A. Coleman, Denver, Colorado, for Defendant–Appellee Planned Parenthood of the Rocky Mountains Services Corporation Isaacson Rosenbaum, P.C., Edward T. Ramey, Denver, Colorado, for Defendant–Appellee Boulder Valley Women's Health Center, Inc.

Opinion by Judge J. JONES.

Plaintiff, Mark Hotaling, claims that certain contracts entered into between the Colorado Department of Public Health and Environment (the Department) and two entities that provide family planning services violate article V, section 50 of the Colorado Constitution, which provides that public funds may not be used, directly or indirectly, to pay for abortions. The district court dismissed Mr. Hotaling's complaint, concluding that because the funds at issue are entirely federal funds, Mr. Hotaling lacks Colorado taxpayer standing to challenge the contracts. We agree with the district court, and, therefore, we affirm.

## I. Background

The United States Department of Health and Human Services (DHHS) provided the funds at issue here to the state through two programs: the National Breast and Cervical Cancer Early Detection Program, *see* 42 U.S.C. §§ 300k to 300n–5, and the nonabortion family planning services program established by Title X of the Public Health Service Act, *see* 42 U.S.C. §§ 300 to 300a–8. Pursuant to these programs, DHHS provides federal money to the Department, which must select grantees for the funds subject to federal limitations and requirements.

Mr. Hotaling's complaint challenges five contracts the Department awarded under these federal programs in 2007; three to Planned Parenthood of the Rocky Mountains Services Corporation (Services Corp.) and two to Boulder Valley Women's Health Center, Inc. (Boulder Valley). It is undisputed that all of the money awarded under these contracts is federal money,[1] that neither Services Corp. nor Boulder Valley lawfully may use any of this money to provide abortion services, and that they have not used any of this money to pay for abortion services. Mr. Hotaling alleges, however, that the grants permit Services Corp. and Boulder Valley to subsidize abortion services by enabling them to divert money they otherwise would have

---

1. The district court found that the federal money did not lose its federal character by virtue of its being transferred to the Department because it constitutes "custodial funds"—that is, funds which the state holds in a purely custodial capacity. *See In re Interrogatories on House Bill 04–1098*, 88 P.3d 1196, 1201–02 (Colo.2004). Mr. Hotaling does not challenge that finding on appeal. He does contend on appeal that state money has been expended because "the cost of the salaries and benefits and facilities of the state employees administering the program[s] are paid by state funds." He did not raise this contention in the district court, however, and therefore we will not address it. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n. 5 (Colo.1992); *Glover v. Innis*, 252 P.3d 1204, 1208–09 (Colo.App.2011).

spent providing the nonabortion services funded by the federal programs to abortion services. He alleges that in awarding these contracts the Department violated article V, section 50 of the Colorado Constitution, which provides:

> **Public funding of abortion forbidden.** No public funds shall be used by the State of Colorado, its agencies or political subdivisions to pay or otherwise reimburse, either directly or indirectly, any person, agency or facility for the performance of any induced abortion, PROVIDED HOWEVER, that the General Assembly, by specific bill, may authorize and appropriate funds to be used for those medical services necessary to prevent the death of either a pregnant woman or her unborn child under circumstances where every reasonable effort is made to preserve the life of each.

Mr. Hotaling also alleges that, as a Colorado taxpayer, he has "a legally protected interest in ensuring that public funds are not expended in violation of the Colorado Constitution."

Defendants, who include, in addition to Services Corp. and Boulder Valley, the Governor of the State of Colorado [2] and the Executive Director of the Department, moved to dismiss the complaint under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction and under C.R.C.P. 12(b)(5) for failure to state a claim. Defendants' C.R.C.P. 12(b)(1) motion argued that Mr. Hotaling lacks Colorado taxpayer standing to challenge the contracts because none of the money awarded under those contracts was state money. Their C.R.C.P. 12(b)(5) motion argued that, as a matter of law, the expenditures at issue were not direct or indirect expenditures for abortion services, and therefore did not run afoul of article V, section 50.

The district court agreed with defendants' argument that Mr. Hotaling lacks Colorado taxpayer standing. The court did not reach the merits of defendants' motion to dismiss for failure to state a claim. Hence, the only issue before us on appeal is whether the district court erred in concluding that Mr. Hotaling lacks Colorado taxpayer standing.

## II. Discussion

■ We review the question of whether a plaintiff has standing de novo. *Barber v. Ritter*, 196 P.3d 238, 245 (Colo.2008); *Ainscough v. Owens*, 90 P.3d 851, 855 (Colo.2004).

■ A court does not have jurisdiction over a case unless a plaintiff has standing to bring it. Thus, standing is a threshold issue that a court must resolve before deciding a case on the merits. *Barber*, 196 P.3d at 245; *Ainscough*, 90 P.3d at 855. If the plaintiff does not have standing, the case must be dismissed. *State Bd. for Community Colleges v. Olson*, 687 P.2d 429, 435 (Colo.1984); *Wimberly v. Ettenberg*, 194 Colo. 163, 168, 570 P.2d 535, 539 (1977).

■ To establish standing, a plaintiff suing in Colorado state court must establish that (1) he incurred an injury-in-fact; and (2) the injury was to a legally protected interest. *Barber*, 196 P.3d at 245; *Ainscough*, 90 P.3d at 855; *Wimberly*, 194 Colo. at 168, 570 P.2d at 538.

■ An injury-in-fact may be tangible or intangible. But a remote possibility of future injury or an injury overly indirect or incidental to the challenged action of the defendant is not sufficient. *Barber*, 196 P.3d at 246; *Ainscough*, 90 P.3d at 856. Generally speaking, this prong of the standing test requires " 'a concrete adverseness which sharpens the presentation of issues that parties argue to the courts.' " *Ainscough*, 90 P.3d at 856 (quoting *City of Greenwood Village v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 437 (Colo.2000)).

■ "Whether the plaintiff's alleged injury was to a legally protected interest 'is a question of whether the plaintiff has a claim for relief under the constitution, the common law, a statute, or a rule or regulation.' " *Barber*, 196 P.3d at 246 (quoting in part *Ainscough*, 90 P.3d at 856). "Like an injury-in-fact, a legally protected interest may be tangible or intangible." *Id.*

---

**2.** Though the complaint named Governor Ritter as a defendant, because he no longer holds office, we have substituted Governor Hickenlooper for Governor Ritter. *See* C.A.R. 43(c)(1).

Colorado case law provides for broad taxpayer standing. *Ainscough*, 90 P.3d at 856. " '[T]axpayers have standing to seek to enjoin an unlawful expenditure of public funds' " and " 'even where no direct economic harm is implicated, a citizen has standing to pursue his or her interest in ensuring that governmental units conform to the state constitution.' " *Barber*, 196 P.3d at 246 (quoting *Nicholl v. E–470 Pub. Highway Auth.*, 896 P.2d 859, 866 (Colo.1995)). Our supreme court has said that a plaintiff-taxpayer has standing when he " 'argues that a governmental action that harms him is unconstitutional' " and that "when a plaintiff-taxpayer alleges that a government action violates a specific constitutional provision . . ., such an averment satisfies the two-step standing analysis." *Id.* at 246, 247 (quoting in part *Ainscough*, 90 P.3d at 856; and citing *Dodge v. Dep't of Social Services*, 198 Colo. 379, 382–83, 600 P.2d 70, 72 (1979)).

Relying on these broad pronouncements, Mr. Hotaling contends that he has standing because he is a Colorado taxpayer and he has alleged that the Department's action in awarding the contracts at issue violates the Colorado Constitution. We conclude, however, based on an examination of *Barber* and other taxpayer standing decisions, that the concept of taxpayer standing is not so broad as to permit Mr. Hotaling's claim.

In *Barber*, state taxpayers challenged the General Assembly's transfers of money from special funds to the state's general fund, claiming that the transfers violated state constitutional prohibitions against imposing taxes without voter approval and taking on debt. In holding that the taxpayers had standing to assert these claims, the supreme court reviewed and relied on the holdings in the following taxpayer standing cases:

1. *Dodge*, 198 Colo. 379, 600 P.2d 70. In *Dodge*, the plaintiffs alleged that a state agency was spending state funds to finance nontherapeutic abortions in violation of article V, section 50. In holding that the plaintiffs had standing as taxpayers, the supreme court, relying on *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), apparently concluded that there was (1) a nexus between the plaintiffs' status as taxpayers and the government action and (2) a nexus between their status as taxpayers and the constitutional provision allegedly violated. *Dodge*, 198 Colo. at 382–83, 600 P.2d at 72.

2. *Conrad v. City & County of Denver*, 656 P.2d 662 (Colo.1982). In *Conrad*, several Denver taxpayers challenged the use of city tax dollars to fund the display of a nativity scene. *See Barber*, 196 P.3d at 246 n. 9 (discussing *Conrad*). The court held, relying on Dodge, that the taxpayers had standing because they sought to enjoin an allegedly unlawful expenditure of city funds. *Conrad*, 656 P.2d at 668.

3. *Nicholl*, 896 P.2d 859. In *Nicholl*, the court held, as relevant here, that a taxpayer had standing to claim that a governmental entity had violated Colorado constitutional prohibitions concerning revenue generation and incurring debt (the same type of claim as asserted in *Barber* ).[3]

In these cases, as well as in *Barber*, there was some connection, albeit perhaps slight, between the plaintiffs' status as taxpayers and the challenged government actions. Though the taxpayers may not have been harmed directly, they were arguably harmed indirectly in that funds to which they had contributed as taxpayers were affected. In *Dodge, Conrad*, and *Nicholl*, the injury occurred by virtue of an expenditure of funds to which the taxpayers had contributed. In *Barber*, the funds were transferred to the general fund, to which the taxpayers had contributed.

Thus, in *Barber*, the court held that the plaintiffs had alleged an injury-in-fact "because they seek review of what they claim 'is an unlawful government expenditure which is contrary to our state government.' " 196 P.3d at 246–47 (quoting in part *Nicholl*, 896 P.2d at 866). Though the court then said that

**3.** The court in *Barber* also cited *Ainscough* for general principles of taxpayer standing. *Ainscough*, however, did not involve a claim of taxpayer standing; its discussion of taxpayer standing was merely by way of noting an example of Colorado case law's liberal attitude toward standing.

"when a plaintiff-taxpayer alleges that a government action violates a specific constitutional provision ..., such an averment satisfies the two-step standing analysis," *id.* at 247, we conclude, based on the context of the statement and the holdings of the cases on which the court relied, that the court did not intend to dispense with the requirement that there be some nexus between the plaintiff's status as a taxpayer and the challenged government action. *See id.* at 246 (noting the requirement of an injury that is not overly indirect or incidental); *Ainscough*, 90 P.3d at 856 (same).[4]

Our understanding of Colorado taxpayer standing jurisprudence, and in particular this nexus requirement, is reinforced by *Brotman v. East Lake Creek Ranch, L.L.P.*, 31 P.3d 886 (Colo.2001). In *Brotman*, a state taxpayer sought to enjoin a transfer by the State Board of Land Commissioners of school land held in trust by the Land Board. The taxpayer claimed that the transfer was in reality a sale that violated constitutionally mandated procedures for sales of school lands held in trust by the Land Board. The supreme court held that the plaintiff did not have taxpayer standing because the Land Board holds school lands in trust "for the benefit of Colorado's public schools, and not for the benefit of taxpayers at large...." *Id.* at 887. As particularly relevant here, the court reasoned:

> [I]ncome generated from the Land Board's management of school lands is distinct from and in addition to income generated through taxation for schools.... Thus, because the Land Board's management—or mismanagement—of school lands has no effect on the state's funding of schools through the taxing power, management de-

cisions of the Land Board have no effect on the [plaintiff] as a taxpayer.

*Id.* at 892. The court expressly distinguished the case from *Dodge*, which it characterized as involving a claim that "the expenditure of *state* funds for nontherapeutic abortions violated" the Colorado Constitution. *Id.* at 889 (emphasis added); *see also id.* at 891–92. In effect, the court concluded that there was no nexus between the plaintiff's status as a state taxpayer and the challenged government action.

This case is analogous to *Brotman*. Mr. Hotaling challenges an expenditure of federal funds—to which he has no connection as a Colorado taxpayer.[5] Just as the Land Board's action in *Brotman* had no effect on the plaintiff as a taxpayer, the Department's award of federal funds to Services Corp. and Boulder Valley has not had and will not have any effect, even incidental or indirect, on Mr. Hotaling as a Colorado taxpayer.[6] We therefore conclude that Mr. Hotaling has not suffered an injury-in-fact and consequently does not have standing to challenge the contracts at issue. It follows that the district court did not err in granting defendants' motion to dismiss.

The judgment is affirmed.

ROY and LOEB, JJ., concur.

---

4. The Colorado Supreme Court has also recognized taxpayer standing where the plaintiff alleges that an activity is contrary to the form of government established by the Colorado Constitution. *See Dodge*, 600 P.2d at 71; *Howard v. City of Boulder*, 132 Colo. 401, 403–04, 290 P.2d 237, 238 (1955). This case does not concern such an allegation. Whether the state has spent public money in violation of article V, section 50 has nothing to do with the form of government at any level.

5. Though Mr. Hotaling notes that he is also a federal taxpayer, he does not appear to claim

standing to allege a violation of state law by virtue of that status. In any event, he made no such contention in the district court, and therefore did not preserve it for appeal.

6. We reject Mr. Hotaling's contention that the district court conflated the standing inquiry with the merits of his claims. The question whether the funds at issue are federal or state is relevant to the standing inquiry. The question whether the contracts violate article V, section 50 is not. Contrary to Mr. Hotaling's contention, the district court decided only the former question.