23CA0676 & 23CA1004 Guy v BCC Basalt 10-31-2024

COLORADO COURT OF APPEALS

Court of Appeals Nos. 23CA0676 & 23CA1004
Eagle County District Court No. 22CV30177
Honorable Paul R. Dunkelman, Judge

Theodore K. Guy,

Plaintiff-Appellant,

v.

BCC Basalt, LLC, a Colorado limited liability company, and Town of Basalt, a Colorado home rule municipality,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE HARRIS
J. Jones and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 31, 2024

Neiley Law Firm, LLC, Richard Y. Neiley, Jr., Glenwood Springs, Colorado, for Plaintiff-Appellant

Ferguson Schindler Law Firm P.C., Matthew Ferguson, Aspen, Colorado, for Defendant-Appellee BCC Basalt

Nathan Dumm & Mayer P.C., Nicholas C. Poppe, Denver, Colorado, for Defendant-Appellee Town of Basalt

¶ 1     Plaintiff, Theodore K. Guy, appeals the dismissal of his C.R.C.P. 106(a)(4) action against defendants, the Town of Basalt and BCC Basalt, LLC, for lack of standing.  We affirm.

## I.     Background

¶ 2     In August 2022, after a series of public meetings and hearings, the Town's council approved BCC Basalt's rezoning and development plan permitting the construction of a grocery store and sixty-five apartments in the Town's downtown area (the development project).

¶ 3     Guy owns, among other properties in the Town, a home at the end of Swinging Bridge Lane, which is located across the Frying Pan River from the development project.  He sued the Town and BCC Basalt,[1] asserting a claim under C.R.C.P. 106(a)(4) that the Town council had abused its discretion by approving the redevelopment project.  Guy's complaint alleged that the development project did not comply with the Town's master plan.  He claimed a "cognizable

_____

[1] Basalt Center Partnership was a defendant in the district court, but it is not a party to this appeal.

interest in the litigation" based on his status as a "resident, tax payer, and property owner."

¶ 4    The Town moved to dismiss Guy's complaint under C.R.C.P. 12(b)(1) for lack of standing.  According to the Town, Guy had failed to allege either a legally protected interest that had been infringed or any injury particular to him.

¶ 5    In his response, Guy argued that as a property owner "in the vicinity of the rezoning" — "550 feet as the crow[] flies" or "1,500 feet driving distance"[2] — he had common law standing to challenge the approval.  He identified his probable injuries as follows:

---

[2] An exhibit submitted to the district court shows the approximate location of Guy's home vis-à-vis the development project:



- Because parking for the development project is inadequate, "there will be resulting parking shortages and congestion, including in [his] neighborhood."

- "There will be traffic congestion that will make it more difficult and time consuming for [him] to drive from [his] residence to downtown Basalt and other destinations."

- "Aesthetically[, he] find[s] the design of the [development project] offensive," because it is "too tall" and "does not reflect the historic architecture of the Old Town Basalt surroundings in which it is located."

¶ 6      The district court found that Guy's alleged injuries were "unsupported, vague, or speculative" and not sufficiently particular to him. Thus, it concluded that Guy lacked standing and dismissed the complaint.

## II.     Standing

¶ 7      Guy contends that he sufficiently alleged an injury in fact to a legally protected interest, and therefore he has standing to challenge the Town's approval of the development project. We disagree.

3

A. Legal Principles and Standard of Review

¶ 8    Standing is a jurisdictional prerequisite to a court's resolution of a case on the merits. *See Hickenlooper v. Freedom from Religion Found., Inc.*, 2014 CO 77, ¶ 7. "If the plaintiff does not have standing, the case must be dismissed." *Hotaling v. Hickenlooper*, 275 P.3d 723, 725 (Colo. App. 2011).

¶ 9    To establish standing, a plaintiff must demonstrate that (1) he suffered an injury in fact and (2) the injury is to a legally protected interest. *Wimberly v. Ettenberg*, 570 P.2d 535, 539 (Colo. 1977).

¶ 10   The injury-in-fact prong of the test is rooted in separation of powers principles: because the requirement "guarantees 'concrete adverseness,' it prevents courts from encroaching" into the legislative sphere. *Weld Cnty. Bd. of Cnty. Comm'rs v. Ryan*, 2023 CO 54, ¶ 10 (quoting *Ainscough v. Owens*, 90 P.3d 851, 856 (Colo. 2004)). Thus, a claimed injury must be "direct" and "individualized," not "indirect and incidental" to the challenged action. *Freedom from Religion Found.*, ¶¶ 9, 11 n.10.

¶ 11   The legally-protected-interest prong "reflects prudential considerations of judicial self-restraint," *Colo. Gen. Assembly v.*

4

*Lamm*, 700 P.2d 508, 516 (Colo. 1985), by recognizing that parties actually protected by some source of substantive law are "generally best situated to vindicate their own rights," *Freedom from Religion Found.*, ¶ 10 (citation omitted). Thus, to show a legally protected interest, the plaintiff must have "a claim for relief under the constitution, the common law, a statute, or a rule or regulation." *Ainscough*, 90 P.3d at 856; *see also Weld Cnty.*, ¶ 11 ("To be legally protected, an interest must derive from the 'constitution, the common law, a statute, or a rule or regulation.'") (citation omitted).

¶ 12 At bottom, "the standing requirement distinguishes 'those particularly injured by . . . government action,' who may present their controversy for resolution by the courts, from members of the general public, whose interests are more remote and who 'must address their grievances against the government through the political process.'" *Reeves-Toney v. Sch. Dist. No. 1*, 2019 CO 40, ¶ 22 (citation omitted).

¶ 13 Whether a plaintiff has standing to sue is a legal question that we review de novo. *Nash v. Mikesell*, 2021 COA 148M, ¶ 16.

## B. Guy Did Not Suffer an Injury in Fact to a Legally Protected Interest

¶ 14    Guy does not contend that he has a claim against the Town under the constitution, a statute, a rule or regulation, or any Town code or ordinance.  Instead, he says his legally protected interest derives exclusively from the common law.  According to Guy, as a "neighboring property owner," he has a right under Colorado case law to "challenge a rezoning decision that adversely affects him," even if his claimed injuries are unrelated to his status as a neighboring property owner.

¶ 15    We agree that under the common law, a "property owner . . . has a legally protected interest in insulating [his] property from adverse effects caused by the legally deficient rezoning" of adjacent or nearby property.  *Bd. of Cnty. Comm'rs v. City of Thornton*, 629 P.2d 605, 609 (Colo. 1981); *see also Snyder v. City Council*, 531 P.2d 643, 644 (Colo. App. 1974) ("[L]andowners within a municipality who are aggrieved by the zoning of property adjacent to or near their own property have standing to seek judicial review

6

of the actions of zoning authorities alleged to be arbitrary and capricious.").[3]

¶ 16    But the "two prongs of the standing test do not exist independently of one another" — the plaintiff must have suffered "an injury in fact *to* a legally protected interest." *Roane v. Elizabeth Sch. Dist.*, 2024 COA 59, ¶ 35. "Thus, the scope of the legally protected interest also informs what constitutes an injury to that particular interest." *Id.* The legally protected interest at issue here is an interest in protecting nearby property from the adverse effects of zoning decisions. To establish standing, then, Guy must demonstrate that the zoning decision will cause specific harm to his property or his use of it. *See Weld Cnty.*, ¶ 2 (A plaintiff lacks

---

[3] Contrary to Guy's understanding, "aggrieved" in the standing context does not mean "feeling distress" or being "offended." Rather, "aggrieved" means "the denial to the party of some claim of right, either of property or of person, or the imposition upon him of some burden or obligation." *City & Cnty. of Broomfield v. Farmers Reservoir & Irrigation Co.*, 235 P.3d 296, 302 (Colo. 2010); *see also* Black's Law Dictionary 80 (12th ed. 2019) ("[A]ggrieved" means "having legal rights that are adversely affected; having been harmed by an infringement of legal rights."). Thus, the holding in *Snyder v. City Council*, 531 P.2d 643, 644 (Colo. App. 1974), is a restatement of the standing test: a nearby landowner has standing to seek review of zoning actions when the landowner has suffered an injury or infringement to his legal rights resulting from the zoning action.

standing to sue even if it has a legally protected interest if it cannot "demonstrate an injury *to that interest.*") (emphasis added).

¶ 17 And while proximity is not decisive, "the distance between the land subject to the [zoning] decision and the land of the petitioner is relevant in determining whether an owner has been specially affected by a land use decision." 4 Patricia E. Salkin, Am. Law of Zoning § 42:17 (5th ed. updated May 2024). As the distance increases, the likelihood of proving an individualized injury from the rezoning decreases. *See, e.g.*, *Bedford v. Bd. of Cnty. Comm'rs*, 584 P.2d 90, 91 (Colo. App. 1978) (a plaintiff who lived adjacent to site rezoned from agricultural to planned unit development had standing to challenge rezoning based on increased population density in surrounding area, but plaintiffs who lived three miles away lacked standing).

¶ 18 As noted, Guy's claimed injuries are that (1) insufficient parking at the development project site will potentially lead to more parking on his street; (2) increased congestion near the development project site will increase his commute time to downtown Basalt; and (3) the overall look of the development

8

project will cause aesthetic harm.  None of these constitutes an injury in fact to his legally protected interest under the common law.

### 1.    Parking

¶ 19    Guy alleges that the rezoning decision will result in an increase in street parking near his property.  The district court found the injury to be vague and speculative because, among other reasons, Guy did not aver that parking is permitted on his road. We agree with the district court.

¶ 20    The photographs in the record show that Guy's property is at the end of a paved drive that extends off Swinging Bridge Lane.  The drive appears to serve about four homes.  Guy did not allege that parking is permitted on the shared drive or on Swinging Bridge Lane itself.  In his reply brief, Guy says that the Town failed to "provide evidence that parking [is] prohibited on Swinging Bridge Lane."[4]  But as the plaintiff, Guy has the burden to establish

---

[4] According to the Basalt Municipal Code, parking is prohibited on the "pavement" on Swinging Bridge Lane.  *See* Basalt Mun. Code § 8-4.

9

standing.  *See TABOR Found. v. Colo. Dep't of Health Care Pol'y & Fin.*, 2020 COA 156, ¶ 30.

¶ 21   In any event, Guy does not allege that any increased street parking will adversely affect him as a property owner.  He does not claim, for example, that he parks on a street or that street parking would affect his ingress or egress to or from the shared driveway.  Nor does he allege that increased street parking would adversely affect his property's value or his safety.  To have standing to appeal a zoning decision, a plaintiff must offer specific facts to establish perceptible harm.  *See Rangeview, LLC v. City of Aurora*, 2016 COA 108, ¶ 40 (Taubman, J., concurring in part and dissenting in part) (citing *Valcourt v. Zoning Bd. of Appeals*, 718 N.E.2d 389, 392 (Mass. App. Ct. 1999)).

¶ 22   Therefore, even if the development project results in an increase in street parking in his neighborhood, Guy has not demonstrated an actual and direct injury to his legally protected interest as a property owner.

## 2. Traffic Congestion Near the Development Project

¶ 23    Next, Guy contends that the zoning decision will cause "traffic congestion" that will increase the driving time from his property to downtown Basalt and "other destinations."  The district court found this injury was insufficiently individualized to confer standing. Again, we agree with the district court.

¶ 24    As noted, to establish an injury in fact, a plaintiff must show that he suffered an "individualized" injury.  *Freedom from Religion Found.*, ¶ 11 n.10.  An "individualized" injury is one that "affect[s] the plaintiff in a personal and individual way," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation omitted) — i.e., in a way that is distinct from the harm experienced by the public at large, *see Kolwicz v. City of Boulder*, 538 P.2d 482, 483 (Colo. App. 1975) (The plaintiff lacked standing to challenge city's failure to approve a flood plain map because she had "no special interest in the subject matter of th[e] lawsuit which [wa]s different from a general interest theoretically shared by the tens of thousands of other residents of Boulder.").

11

¶ 25    A general complaint about "traffic congestion" cannot constitute an injury in fact because it merely identifies a harm suffered by anyone traveling in the general vicinity of the development project.  *See, e.g., Concerned Cmty. Involved Dev., Inc. v. City of Houston*, 209 S.W.3d 666, 672 (Tex. App. 2006) (neighbors lacked standing to challenge zoning decision based on increased traffic because that injury would be "suffered by the community in general"); *Nickerson v. Zoning Bd. of Appeals of Raynham*, 761 N.E.2d 544, 547 (Mass. App. Ct. 2002) (The plaintiff lacked standing to challenge a zoning decision based on increased traffic because "the plaintiff's interest [wa]s not substantially different from that of all of the other members of the community who [we]re frustrated and inconvenienced by heavy traffic on Route 44."). Under Guy's theory of standing, anyone who might drive through downtown Basalt (even non-residents of the Town) would have a right to challenge the rezoning decision based on an increased travel time.  And, if anything, Guy's ability to walk into downtown Basalt in a few minutes suggests that his concerns about traffic at

the development project site are "far less acute than that of many other [T]own citizens." *Nickerson*, 761 N.E.2d at 548.

¶ 26 Guy's claim of injury is also too vague and unsupported to confer standing. At the public hearing in August 2022, the Town's planning director explained that BCC Basalt had submitted a traffic report that anticipated reduced traffic from the proposed mixed use project versus a larger retail project. (In his public comments, Guy supported a larger retail project.) A representative of BCC Basalt said that the study was "reviewed and accepted by [the Colorado Department of Transportation]."

¶ 27 To state an injury in fact, Guy has to allege *some* facts to support his claim of "traffic congestion." An affidavit that includes a conclusory and speculative assertion that traffic will worsen is insufficient to demonstrate an injury. *See, e.g., Whittier v. Plan. Bd. of Town of Ipswich,* Case No. 22MISC554, 2023 WL 3841907, *8 (Mass. Land Ct. June 6, 2023) (discussing cases in which courts denied standing to plaintiffs who failed to support a claim of traffic congestion in the face of contrary traffic studies).

### 3.    Aesthetic Concerns

¶ 28    Finally, Guy alleges that the zoning decision offends his sense of aesthetics and his purported interest in maintaining the Town's aesthetic standards.

¶ 29    We conclude that the district court correctly determined that Guy's personal distaste for the aesthetics of the development project does not give him standing to sue.  As we have explained, Guy's legally protected interest is limited to protecting his property from the adverse effects of a zoning decision.  But he has never said that the look of the development project will adversely affect his property.  For example, he does not allege that the design of the development project would decrease his property's value, that the height of any building would block a view, or that the overall look would alter the character of *his neighborhood.*  As the Town points out, Guy has not even alleged that he can see the development project from his property.

¶ 30    We disagree with Guy that residents living near a development site have a free-standing right to enforce their subjective aesthetic preferences.  True, Colorado case law has recognized that the injury

in fact necessary to establish standing need not be tangible but "may also be intangible, such as aesthetic issues or the deprivation of civil liberties." *Ainscough*, 90 P.3d at 856. But that does not mean that Guy has common law standing to challenge every rezoning that offends his aesthetic sensibilities. He must still show that the intangible aesthetic injury was *to* his interest as a property owner. *See Friends of the Black Forest Reg'l Park, Inc. v. Bd. of Cnty. Comm'rs*, 80 P.3d 871, 877 (Colo. App. 2003) (organization committed to preserving the park and owners of property adjoining the park had standing to challenge approval of a road easement that would affect the aesthetics of the park and "erode the property values of adjoining landowners").

¶ 31   We do not read *Rangeview* to establish a different rule. In that case, the city council approved a development plan that called for rezoning residential property to allow for the construction of a gas station and convenience store. *Id.* at ¶ 3. The plaintiffs, owners of homes adjacent to the rezoned parcel, challenged the city council's approval, alleging, with support from an expert, that the proposed development would "result in a decrease in home values in adjacent

15

neighborhoods." *Id.* at ¶ 12. The division concluded that the record therefore established that the plaintiffs had suffered an injury in fact. *Id.* The division also agreed that the plaintiffs had sufficiently alleged an economic and aesthetic injury from the development plan's failure to include an outdoor gathering space. *Id.* at ¶ 13.

¶ 32 Guy contends that *Rangeview* stands for the proposition that aesthetic harm can constitute an injury in fact even if that harm is not connected to the plaintiff's property interest. But in our view, the case merely applies well-established standing principles to conclude that homeowners who would have had the use of an outdoor gathering space suffered an aesthetic injury to their property interest when the outdoor space was excluded from a development plan. *Id.* Guy has not alleged any similar aesthetic harm to the use of his property.

¶ 33 Still, Guy insists that his aesthetic harm argument is not premised solely on his subjective distaste for the development project's design. He says that his injury is also based on the Town's failure to comply with its own master plan and other land use regulations. But this argument fares no better. "A citizen may not

16

sue based only on an 'asserted right to have the Government act in accordance with law.'" *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (quoting *Allen v. Wright*, 468 U.S. 737, 754 (1984)).

¶ 34 Because none of Guy's alleged injuries constitute an injury in fact to his legally protected interest as a property owner, he lacks standing to challenge the Town's zoning decision. Accordingly, the district court did not err by dismissing the complaint.

### III. Disposition

¶ 35 The judgment is affirmed.

JUDGE J. JONES and JUDGE GOMEZ concur.