The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
April 9, 2026

## 2026COA27

No. 25CA0175, *Douglas County v. Colorado* — Government — State and Local Involvement in Immigration Detention; Constitutional Law — Colorado Constitution — Article XIV — Intergovernmental Relationships — Article V — Revival, Amendment, or Extension

A division of the court of appeals addresses, for the first time in a reported case, whether H.B. 23-1100 — which prohibits counties and political subdivisions from entering into immigration detention agreements with the federal government or private entities — violates a county's right to contract with the federal government, as protected by article XIV, section 18 of the Colorado Constitution.  Similarly, this is the first reported case addressing whether H.B. 23-1100 violates article V, section 24 of the Colorado Constitution, which prohibits the amendment of statutes by reference to their title only.  The division concludes that H.B. 23-1100 and the resulting statutes do not violate article XIV, section

18 or article V, section 24 of the Colorado Constitution, and the district court did not err by dismissing Douglas County's claims for lack of standing.

COLORADO COURT OF APPEALS        **2026COA27**

---

Court of Appeals No. 25CA0175
City and County of Denver District Court No. 24CV31125
Honorable David H. Goldberg, Judge

---

Douglas County, Colorado acting through the Board of County Commissioners of Douglas County Colorado, in their elected and official capacity, and Douglas County Sheriff,

Plaintiffs-Appellants,

v.

State of Colorado, by and through Jared S. Polis, in his official capacity as Governor of Colorado,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE SCHUTZ
Freyre and Brown, JJ., concur

Announced April 9, 2026

---

Jeffrey A. Garcia, County Attorney, Andrew C. Steers, Deputy County Attorney, Castle Rock, Colorado, for Plaintiffs-Appellants

Philip J. Weiser, Attorney General, Kyle M. Holter, Assistant Attorney General, Joseph G. Michaels, Assistant Solicitor General, Talia Kraemer, Assistant Solicitor General, Denver, Colorado, for Defendant-Appellee

¶ 1    Plaintiffs, Douglas County, acting through its Board of County Commissioners, and the Douglas County Sheriff (collectively, County), appeal the district court's order granting the motion of defendant, the State of Colorado, acting through Governor Jared S. Polis, to dismiss on the grounds that the County suffered no injury to a legally protected interest and therefore lacked standing to bring its claims. We affirm the district court's judgment.

## I.    Background and Procedural History

### A.    Legislative Overview

¶ 2    In 2019, the General Assembly enacted House Bill 19-1124 (H.B. 19-1124), which created article 76.6 of title 24 of the Colorado Revised Statutes. *See* Ch. 299, sec. 2, 2019 Colo. Sess. Laws 2760-62. The law declares that "[r]equests for civil immigration detainers . . . are not warrants under Colorado law" and are not "reviewed, approved, or signed by a judge as required by Colorado law," so the continued detention of an inmate under such requests beyond when they would otherwise be released constitutes an unconstitutional "warrantless arrest." § 24-76.6-102(1)(b), C.R.S. 2025. Accordingly, the law mandates that state law enforcement officers "shall not arrest or detain an individual on the basis of a

1

civil immigration detainer." § 24-76.6-102(2)(a). The law also prohibits probation officers and employees from providing personal information about individuals to federal immigration authorities. § 24-76.6-103(1)(a), C.R.S. 2025.

¶ 3    In 2024, while this matter was being litigated in the district court, a division of this court concluded that H.B. 19-1124's prohibitions on Colorado law enforcement arresting and detaining individuals based solely on civil immigration detainers prevailed over a county sheriff's general grant of authority under Colorado law. *Nash v. Mikesell*, 2024 COA 68, ¶¶ 44-45 (citing § 30-10-516, C.R.S. 2025); *see* § 30-10-516 ("It is the duty of the sheriffs, undersheriffs, and deputies to keep and preserve the peace in their respective counties, and to quiet and suppress all affrays, riots, and unlawful assemblies and insurrections."). The division in *Mikesell* also concluded that federal law does not require a state to comply with immigration detainer requests and, therefore, federal law did not preempt H.B. 19-1124. *Id.* at ¶ 34 (citing 8 U.S.C. § 1357(g)(1)); *see* 8 U.S.C. § 1357(g)(1) (The United States "Attorney General may enter into a written agreement with . . . any political subdivision of a State . . . to perform a function of an immigration officer in

2

relation to the investigation, apprehension, or detention of aliens in the United States . . . to the extent consistent with State and local law.").

¶ 4 Following up on H.B. 19-1124, in 2023, the General Assembly enacted House Bill 23-1100 (H.B. 23-1100), which created article 76.7 of title 24 of the Colorado Revised Statutes. *See* Ch. 413, sec. 2, 2023 Colo. Sess. Laws 2449. As relevant to this case, section 24-76.7-102(1), C.R.S. 2025, provides that state governmental entities may not

> (a) Enter into an agreement of any kind for the detention of individuals in an immigration detention[1] facility that is owned, managed, or

---

[1] In its briefing on appeal, the County often transposes the terms "detainer" and "detention." H.B. 19-1124, as codified in title 24, article 76.6, addresses civil immigration *detainer* requests. *See* § 24-76.6-101(1), C.R.S. 2025 ("'Civil immigration detainer' means a request for federal immigration enforcement to law enforcement officers to arrest or detain an individual or to maintain custody of an individual beyond the time when the individual is eligible for release from custody, including a request for law enforcement agency action, warrant for arrest of alien, order to detain or release alien, or warrant of removal or deportation on a form promulgated by federal immigration enforcement."). H.B. 23-1100, as codified in title 24, article 76.7, addresses civil immigration *detention* agreements. *See* § 24-76.7-101(2), C.R.S. 2025 ("'Immigration detention agreement' means any contract, including but not limited to an intergovernmental service agreement, or portion thereof for payment to a governmental entity to detain individuals for federal civil immigration purposes.").

3

operated, in whole or in part, by a private entity;

(b) Sell any public or government-owned property or building for the purpose of establishing an immigration detention facility that is or will be owned, managed, or operated, in whole or in part, by a private entity; [or]

(c) Pay, reimburse, subsidize, or defray in any way any costs related to the sale, purchase, construction, development, ownership, management, or operation of an immigration detention facility that is or will be owned, managed, or operated, in whole or in part, by a private entity[.]

§ 24-76.7-102(1).

¶ 5 The law also requires governmental entities to terminate any existing immigration detention contracts by January 1, 2024, and mandates that, as of the same date, "a governmental entity shall not enter into or renew an immigration detention agreement." § 24-76.7-103(1), C.R.S. 2025.

## B. The County's Lawsuit

¶ 6 In 2024 the County[2] filed a complaint in district court asserting claims that H.B. 19-1124 and H.B. 23-1100 violate (1) the

---

[2] El Paso, Mesa, Rio Blanco, Elbert, and Garfield Counties and their respective sheriffs were named as plaintiffs in the district court; however, only Douglas County and its sheriff are pursuing this appeal.

4

Supremacy Clause of the United States Constitution; (2) the lawful authority of the executive branch to perform law enforcement functions; (3) the County's right under the Colorado Constitution to contract with the federal government; and (4) the Colorado Constitution by amending existing laws without specifically delineating the changes made to those laws. Based on these claims, the County requested that the court enter a declaratory judgment stating that articles 76.6 and 76.7 of title 24 violate the United States Constitution and the Colorado Constitution.

¶ 7 The State moved to dismiss the County's claims under C.R.C.P. 12(b)(1), on the basis that the County lacked standing to bring its claims and therefore the court lacked jurisdiction to hear the County's complaint, and under C.R.C.P. 12(b)(5), on the basis that the County failed to state viable claims for relief. The State initially argued that, because the County is a political subdivision of the State, it lacked standing to challenge the constitutionality of a state statute. *See Martin v. Dist. Ct.*, 550 P.2d 864, 865 (Colo. 1976), *abrogated by, Colo. State Bd. of Educ. v. Adams Cnty. Sch. Dist. 14*, 2023 CO 52.

¶ 8 In response, the County argued that *Martin*'s standing analysis no longer controlled in view of *Colorado State Board of Education v. Adams County School District 14*, 2023 CO 52. Rather, under *Adams County*, a county's standing to sue is evaluated in the same manner as any other person or entity. Therefore, the County must only satisfy the standing factors enumerated in *Wimberly v. Ettenberg*, 570 P.2d 535, 539 (Colo. 1977).

¶ 9 In a detailed written order, the district court concluded that "[p]olitical subdivisions do not have any rights under the federal constitution," *Adams Cnty.*, ¶ 57, and therefore have no standing to assert federal preemption under the Supremacy Clause. The court also concluded that H.B. 19-1124 and H.B. 23-1100 did not injure the County by improperly infringing on the County's authority, improperly restricting the County's right to contract with the federal government, or amending other statutes by reference to their titles only. Thus, the district court granted the motion to dismiss for lack of standing.

## II. Issues on Appeal

¶ 10 The County does not challenge the district court's ruling with respect to the federal Supremacy Clause, so we do not address that

issue further. Nor does the County pursue any argument on appeal challenging the district court's ruling with respect to H.B. 19-1124. Instead, the County challenges the court's conclusion that the County lacked standing to challenge H.B. 23-1100. Specifically, the County asserts that it has suffered an injury because H.B. 23-1100 violates article XIV, section 18 and article V, section 24 of the Colorado Constitution. We address these contentions in turn.

### A. The County's Standing Under Article XIV, Section 18

¶ 11 The County first claims that the district court erred by rejecting the County's contention that H.B. 23-1100's prohibition against entering into detention agreements violates article XIV, section 18. We are unpersuaded.

### 1. Standard of Review

¶ 12 We review de novo issues of standing and statutory interpretation, including whether a statute or constitutional provision creates a legally protected right. *Weld Cnty. Colo. Bd. of Cnty. Comm'rs v. Ryan*, 2023 CO 54, ¶¶ 8, 13.

### 2. Applicable Law

¶ 13 The County's appellate analysis sometimes blurs the legal standards applicable to a motion to dismiss for lack of standing and

a motion to dismiss for failure to state a claim. That is understandable to a degree because the State's motion was based on both C.R.C.P. 12(b)(1) and (5). But the district court's order was based on lack of standing alone. Nonetheless, we address the standards that control the resolution of both types of motions to contextualize the County's procedural arguments on appeal.

### a. Standards Governing Motions to Dismiss

¶ 14 Under C.R.C.P. 12(b)(5), a claim may be dismissed if it fails to allege plausible facts upon which relief may be granted. *Warne v. Hall*, 2016 CO 50, ¶ 24. In ruling on a C.R.C.P. 12(b)(5) motion, the court must accept all supporting factual allegations as true and view them in the light most favorable to the nonmoving party. *Norton v. Rocky Mountain Planned Parenthood, Inc.*, 2018 CO 3, ¶ 7. But the court does not accept as true a plaintiff's allegations on issues of law. *Warne*, ¶ 9.

¶ 15 Despite this established legal principle, the County notes that *Warne* addressed a motion to dismiss under C.R.C.P. 12(b)(5) for failure to state a claim, rather than a motion to dismiss for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1). The County argues that the district court erred by not deferring to the County's

factual and legal allegations for purposes of determining jurisdiction under C.R.C.P. 12(b)(1).  We disagree.

¶ 16    We are unpersuaded by the County's reliance on *Young v. Green Mountain Water Sanitation District,* (Colo. App. No. 21CA0960, Aug. 11, 2022) (not published pursuant to C.A.R. 35(e)).  First, *Young* is an unpublished opinion from this court and therefore has no precedential value.[3]  *Welby Gardens v. Adams Cnty. Bd. of Equalization,* 71 P.3d 992, 999 (Colo. 2003).  Moreover, *Young* does not state that courts apply a different rule when interpreting legal conclusions in the context of a C.R.C.P. 12(b)(1) motion than they do in the context of a C.R.C.P. 12(b)(5) motion.

¶ 17    The County's reliance on *Tidwell v. City & County of Denver,* 83 P.3d 75, 85 (Colo. 2003), is similarly misplaced.  *Tidwell* simply distinguishes "between a 12(b)(1) motion, where the court is free to

---

[3] Not only does *Young* have no precedential value, but the County's citation to it violates this court's established policy.  Colo. Jud. Branch, *Court of Appeals Policies, Policy Concerning Citation of Opinions Not Selected for Official Publication* (2026), https://perma.cc/9T2D-RGBE ("Opinions not selected for official publication may be cited to the Colorado Court of Appeals only to explain the case history, identify the law of the case, or assert the doctrines of issue preclusion or claim preclusion.").  We trust the County and its counsel will, in the future, abide their obligation to comply with this court's policy.

weigh the evidence and determine only its 'power to hear the case,'" and a 12(b)(5) motion, "which 'results in a determination on the merits at an early stage of plaintiff's case.'" *Id.* at 86 (quoting *Trinity Broad. of Denv., Inc. v. City of Westminster*, 848 P.2d 916, 925 (Colo. 1993)). Nothing in *Tidwell* supports a conclusion that a court treats legal allegations differently in the Rule 12(b)(1) context than in the Rule 12(b)(5) context. To the contrary, *Tidwell* echoes the established legal principles we apply here:

> Where "the jurisdictional issue involves a factual dispute, a reviewing court employs the clearly erroneous standard of review to the trial court's findings." Where, however, the facts are undisputed and the issue is one of law, the appellate court reviews the trial court's jurisdictional ruling de novo.

*Tidwell*, 83 P.3d at 81 (quoting *Springer v. City & County of Denver*, 13 P.3d 794, 798 (Colo. 2000)).

### b.    Standing

¶ 18     "In order for a court to have jurisdiction over a dispute, the plaintiff must have standing to bring the case." *Ainscough v. Owens*, 90 P.3d 851, 855 (Colo. 2004). Because standing is a necessary prerequisite to subject matter jurisdiction, a court must

10

dismiss a case if standing does not exist. *Hotaling v. Hickenlooper*, 275 P.3d 723, 725 (Colo. App. 2011).

¶ 19　To establish standing to pursue its claims challenging H.B. 23-1100, the County must show (1) that it "suffered injury in fact" and (2) that the injury was to a "legally protected interest as contemplated by statutory or constitutional provisions." *Barber v. Ritter*, 196 P.3d 238, 245 (Colo. 2008) (quoting *Wimberly*, 570 P.2d at 538).[4]

¶ 20　To establish an injury in fact, the County must show that it suffered an injury that is "sufficiently direct and palpable to allow a court to say with fair assurance that there is an actual controversy proper for judicial resolution." *O'Bryant v. Pub. Utils. Comm'n*, 778 P.2d 648, 653 (Colo. 1989). Tangible and intangible injuries may satisfy *Wimberly*'s injury-in-fact requirement. *Hickenlooper v.*

---

[4] Despite its contrary position in the district court, the State now concedes that whether the County has standing is controlled by the *Wimberly* test. *See Colo. State Bd. of Educ. v. Adams Cnty. Sch. Dist. 14*, 2023 CO 52, ¶ 46 ("We hold that subordinate state agencies, political subdivisions, and officials raising claims challenging a government entity's decision are not subject to any specialized standing test in addition to the *Wimberly* test; instead, the court should conduct a *Wimberly* analysis, and that should be the end of its standing inquiry.").

*Freedom from Religion Found., Inc.*, 2014 CO 77, ¶ 9. "[T]he injury-in-fact requirement ensures that an actual controversy exists so that the matter is a proper one for judicial resolution." *Id.* (citing *Conrad v. City & County of Denver*, 656 P.2d 662, 668 (Colo. 1982)). "The requirement ensures a 'concrete adverseness' that sharpens the presentation of issues to the court." *Id.* (quoting *City of Greenwood Village v. Petitioners for the Proposed City of Centennial*, 3 P.3d 427, 437 (Colo. 2000)).

¶ 21      To establish the second *Wimberly* prong, a plaintiff must demonstrate that the injury impacted a legally protected interest. *Barber,* 196 P.3d at 245. To determine whether an interest is legally protected, the court must consider "whether the plaintiff has a claim for relief under the constitution, the common law, a statute, or a rule or regulation." *Id.* at 246 (quoting *Ainscough*, 90 P.3d at 856).

### 3.      Analysis

¶ 22      Article XIV, section 18 of the Colorado Constitution — referred to as the Intergovernmental Relationships provision — reads, in relevant part, as follows:

(2)(a) Nothing in this constitution shall be construed to prohibit the state or any of its political subdivisions from cooperating or contracting with one another or with the government of the United States to provide any function, service, or facility lawfully authorized to each of the cooperating or contracting units, including the sharing of costs, the imposition of taxes, or the incurring of debt.

(b) Nothing in this constitution shall be construed to prohibit the authorization by statute of a separate governmental entity as an instrument to be used through voluntary participation by cooperating or contracting political subdivisions.

(c) Nothing in this constitution shall be construed to prohibit any political subdivision of the state from contracting with private persons, associations, or corporations for the provision of any legally authorized functions, services, or facilities within or without its boundaries.

Colo. Const. art. XIV, § 18(2)(a)-(c); *see also* §§ 29-1-201 to -206.5, C.R.S. 2025 (implementing article XIV, section 18(2)(a)-(b)).

¶ 23     The parties agree that H.B. 23-1100 prohibits governmental entities from entering into or renewing immigration detention agreements.  *See* §§ 24-76.7-101(2), -103(1)-(2), C.R.S. 2025. Nevertheless, the County contends that the district court erroneously found that it lacked standing because H.B. 23-1100

13

deprives the County of rights afforded to it under article XIV, section 18 and its implementing statutes. *See* §§ 29-1-201 to -203, C.R.S. 2025.

¶ 24 Both the constitutional and statutory provisions cited by the County allow political subdivisions, such as the County, to enter into contracts with the federal government. But that right is not unfettered. That fact is apparent from the express language of article XIV, section 18(2)(a), which states that the County has the authority to contract with the federal government "to provide any function, service, or facility *lawfully authorized to each of the cooperating or contracting units.*" (Emphasis added.) Similarly, article XIV, section 18(2)(c) states that a political subdivision is not constitutionally prohibited from contracting with private persons or entities "for the provision of any *legally authorized functions, services, or facilities.*" (Emphasis added.) Thus, the operative question is, Who gets to decide what types of functions, services, and facilities the County is legally authorized to provide?

¶ 25 The County essentially argues that it is an autonomous legal entity that is allowed to determine — free from the General Assembly's oversight — what types of services it may provide,

14

including whether it may provide immigration detention services to the federal government. The County is mistaken.

¶ 26    "A county is not an 'independent governmental entity existing by reason of any inherent sovereign authority of its residents; rather, it is a political subdivision of the state, existing only for the convenient administration of the state government, created to carry out the will of the state.'" *Bd. of Cnty. Comm'rs v. Bainbridge, Inc.*, 929 P.2d 691, 699 (Colo. 1996) (quoting *Bd. of Cnty. Comm'rs v. Love*, 470 P.2d 861, 862 (Colo. 1970)). And while counties have been empowered to enter into agreements with other governmental entities, that power is not unlimited; rather, it is subject to the limitations imposed by the state government. *Id.* Thus, "counties have only those powers that are expressly granted to them by the Colorado Constitution or by the General Assembly." *Id.*

¶ 27    In contrast, the state constitution vests the General Assembly with plenary power to adopt general laws, subject only to the restraints and limitations of the United States Constitution and Colorado Constitution. *People v. Y.D.M.*, 593 P.2d 1356, 1359 (Colo. 1979). Therefore, the General Assembly may enact any law

15

that is not expressly or inferentially prohibited by either constitution. *Id.*

¶ 28 A division of this court has applied these established principles in the context of article XIV, section 18(2). *See Bd. of Cnty. Comm'rs v. E-470 Pub. Highway Auth.*, 881 P.2d 412, 421 (Colo. App. 1994), *aff'd in part and rev'd in part on other grounds sub nom., Nicholl v. E-470 Pub. Highway Auth.*, 896 P.2d 859 (Colo. 1995). After quoting article XIV, section 18(2)(a) and (b), the division stated,

> This provision preserves the authority of the General Assembly over political subdivisions created pursuant to it. The General Assembly defines the powers of each contracting entity and, as such, it may alter those rights. And, except to the extent that the Colorado Constitution authorizes a county to act upon a subject, a county has only those powers that are expressly, or by necessary implication, delegated to it by the General Assembly.

*Id.*

¶ 29 Article XIV, section 18(2)(a) allows a political subdivision to enter into any agreement with a governmental entity to provide functions, services, and facilities that the political subdivision is "lawfully authorized" to perform. By adopting H.B. 23-1100, the

16

General Assembly simply removed the County's legal authorization to enter into immigration detention agreements with the federal government. Thus, once H.B. 23-1100 became law, the County lost any legal authority it once had to enter into federal immigration detention agreements. This result is consistent with the General Assembly's plenary authority to enable or limit the County's power as it deems appropriate to conform with "the will of the state." *Bainbridge*, 929 P.2d at 699 (quoting *Love*, 470 P.2d at 862). As a consequence, the district court did not err by concluding that the County suffered no injury to its rights under article XIV, section 18.

¶ 30    The County's reliance on sections 29-1-201 to -203 fares no better. As the County correctly notes, these statutes are intended to facilitate the provisions of article XIV, section 18 by allowing counties to contract with other governmental entities. The language of section 29-1-203(1) is illustrative:

> Governments may cooperate or contract with one another to provide any function, service, or facility *lawfully authorized to each of the cooperating or contracting units*, including the sharing of costs, the imposition of taxes, or the incurring of debt, only if such cooperation or contracts are authorized by each party thereto with the approval of its legislative body or

17

> other authority having the power to so
> approve.

(Emphasis added.) The italicized language dovetails with article XIV, section 18, permitting the governmental entities to enter into intergovernmental agreements to provide services and facilities so long as the two entities are both "lawfully authorized" to enter into such agreements. But as it pertains to immigration detention agreements, the County is no longer authorized to enter into such agreements by the terms of sections 24-76.7-102 and -103. Accordingly, section 29-1-203 cannot be read to permit the County to do that which the state has expressly forbidden.

¶ 31 Skipping over the italicized language of section 29-1-203(1), the County focuses on the last clause of that statute's first sentence, which requires that "such cooperation or contracts are authorized by each party thereto with the approval of its legislative body or other authority having the power to so approve." Because the Douglas County Board of County Commissioners apparently approved the County's entry into an immigration detention agreement, the County argues that it has the authority to do so. But that argument ignores and would render superfluous the

18

italicized portion of section 29-1-203(1). This we may not do. *See Ceja v. Lemire*, 154 P.3d 1064, 1066 (Colo. 2007) ("If courts can give effect to the ordinary meaning of words used by the legislature, the statute should be construed as written, giving full effect to the words chosen, as it is presumed that the General Assembly meant what it clearly said." (quoting *State, Dep't of Corr. v. Nieto*, 993 P.2d 493, 500 (Colo. 2000))).

¶ 32 Equally important, the County's argument fails to recognize the state's broad power to determine what services a county may perform and what services it may not. *Bainbridge*, 929 P.2d at 699. As previously explained, H.B. 23-1100 did just that by prohibiting political subdivisions from entering into immigration detention agreements. Thus, the County's reliance on section 29-1-203 is misplaced.

¶ 33 Nor is the County's argument advanced by its reliance on *Durango Transportation, Inc. v. City of Durango*, 824 P.2d 48 (Colo. App. 1991). True, as the County asserts, the division in *Durango* indicated that sections 29-1-201 to -203 should be interpreted to ensure that contracting entities possess the powers necessary to effectuate intergovernmental agreements. *Id.* at 50. But the

19

division in *Durango* made this observation while acknowledging that "the phrase 'lawfully authorized to each' [means] only that each entity must have the authority to perform the subject activity within its jurisdictional boundaries." *Id.* at 51. Thus, *Durango* reinforces our conclusion that for an intergovernmental agreement to be authorized, both governmental entities must have the authority to provide the function, service, or facility contemplated by the agreement.

¶ 34 For these reasons, the district court did not err by concluding that the County suffered no injury in fact to a legally protected interest under article XIV, section 18 of the Colorado Constitution. Accordingly, the court did not err by concluding that the County lacked standing to challenge H.B. 23-1100 under article XIV, section 18.

B. The County's Standing Under Article V, Section 24

¶ 35 The County also contends that the district court erred by concluding that the County lacked standing to bring its claims under article V, section 24 of the Colorado Constitution. We disagree.

20

### 1. Standard of Review and Applicable Law

¶ 36    As previously explained, we review a district court's legal conclusions regarding standing and statutory interpretation de novo. *Ryan*, ¶ 13.

¶ 37    Article V, section 24 of the Colorado Constitution provides that "[n]o law shall be revived, or amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length." The constitutional provision is designed to "prevent the confusion and uncertainty which prevailed as a result of the amendment of statutes and ordinances by reference to [their] title only, or by interpolating words without re-stating the part amended, often resulting in the legislative body itself being in ignorance of its own enactment." *Thiele v. City & County of Denver*, 312 P.2d 786, 793 (Colo. 1957). The supreme court has explained that article V, section 24 "was framed for the purpose of avoiding confusion, ambiguity and uncertainty in the statutory law through the existence of separate and disconnected legislative provisions, original and amendatory, scattered through different volumes or different portions of the same volumes." *City &*

*County of Denver v. People*, 88 P.2d 89, 91 (Colo. 1939) (quoting

*Callahan v. Jennings*, 27 P. 1055, 1057 (Colo. 1891)).

### 2. Analysis

¶ 38 The County argues that H.B. 23-1100 violates its constitutional rights under article V, section 24 by implicitly amending existing Colorado statutes — namely, sections 29-1-201 to -203 — and thereby diminishing its rights under those statutes. We disagree for two reasons.

¶ 39 First, H.B. 23-1100 simply precludes the County from entering into immigration detention agreements. Nothing in sections 29-1-201 to -203, or any other authority cited by the County, affirmatively grants it the right to enter into immigration detention agreements. Rather, as previously explained, those statutes simply permit the County to enter into intergovernmental agreements to provide those functions, services, and facilities that the state deems appropriate. Because H.B. 23-1100 does not amend sections 29-1-201 to -203 or any other statute identified by the County, article V, section 24 is not implicated.

¶ 40 Second — and relatedly — as the district court correctly noted, article V, section 24 prohibits the revival, amendment, or extension

22

of a law "by reference to its title only." H.B. 23-1100 does not refer to sections 29-1-201 to -203 or any other statutory provision. Rather, as previously explained, H.B. 23-1100 is a new legislative directive that simply prohibits political subdivisions from entering into immigration detention agreements.

¶ 41 Therefore, the district court correctly concluded that the County suffered no injury in fact under article V, section 24 because H.B. 23-1100 does not amend any law by reference to its title only. It necessarily follows that the district court correctly concluded the County lacked standing to challenge H.B. 23-1100 under article V, section 24.

### III. Disposition

¶ 42 The district court's judgment is affirmed.

JUDGE FREYRE and JUDGE BROWN concur.

23